# Hayes's Appeal.

1. Under the Act 27th April 1855 (Pamph. L. 368), the children of deceased uncles and aunts of an intestate take *per stirpes*, and not *per capita*. Brenneman's Appeal, 4 Wright 115, followed.

2. The Act of 1855 constituted the grandchildren of brothers and sisters, and the children of uncles and aunts additional classes of collateral heirs as contradistinguished from next of kin, and the 14th section of the Act of April 8th 1833, (Pamph. L. 315,) does not apply to them.

February 26th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Orphans' Court of *Philadelphia county:* Of January Term 1879, No. 155.

Appeal of Caroline Hayes, Lucinda G. Elder and Mary G. Marr, from the decree of the Orphans' Court of Philadelphia county, distributing the personal estate of Rosetta M. Graham, deceased.

Rosetta M. Graham died November 10th 1877, intestate, unmarried and without issue, her nearest relatives being first cousins, children of deceased paternal uncles and maternal aunts as follows:

1. Mrs. Caroline Hayes, Mrs. Mary G. Marr and Mrs. Lucinda G. Elder, children of Alexander Graham, deceased.

2. Mrs. Isabella Forker, daughter of Thomas Graham, deceased.

3. Thomas Graham, Speaker Graham and Margaret I. Graham, children of John Graham, deceased.

4. Mrs. Harriet Dorsey, daughter of Mrs. Barnum, a maternal aunt of the whole blood.

5. Mrs. Rosetta F. Dewart and Augustus VanHorn, children of Mrs. VanHorn, a maternal aunt of the half blood.

The question raised was whether distribution should be made *per capita* or *per stirpes*, all the several persons among whom the estate was to be distributed standing in the same degree of consanguinity to the intestate.

The auditing judge, Penrose, J., filed the adjudication, making distribution *per stirpes*, and saying :

" Whether the parties shall take *per stirpes* or *per capita* is a question which if it were *res integra* would now be decided, without hesitation, in favor of the latter view.

" The Acts of 1833 and 1855 relating to intestates' estates, are in *pari materia*, and therefore to be read in harmony with each other and as forming one system, the words used being understood in the same sense in each.

" Under the former act, lineal descendants take by ' representation' indefinitely ; yet in all cases, both in the instances specified in sect. 2 and under the express terms of sect. 14, where they all stand in the same degree of relationship they take *per capita*.　Such also is the case with children of deceased brothers and sisters, who, under that act, took by ' representation' and were the only collaterals that did so.

" That persons standing in the same degree of relationship, when they were the only ones participating in the distribution, should take *per capita*, was a marked characteristic of the act, the reasons for which are stated by the commissioners in their remarks on sect. 4 (see Parke and Johns. Dig., p. 781), and to bring every case within the operation of this rule, sect. 14 contained the general provision that ' whenever by the provisions of this act, it is directed that real or personal estate shall descend to or be distributed among several persons, whether lineal or collateral heirs or kindred standing in the same degree of consanguinity to the intestate * * * if there shall be more than one they shall take in equal shares,' &c.

" When, therefore, the Act of 1855 provided for representation so far as *grandchildren* of deceased brothers and sisters and the *children* of deceased uncles and aunts were concerned, it would seem that it was intended, not to destroy the symmetry of the system thus provided, or to grant a rule for *grandchildren* of brothers and sisters, and children of uncles and aunts, different from that in case of *children* of brothers and sisters and grandchildren of the decedent himself, but simply to remedy the hardship arising from

the exclusion of representation ' after brothers' and sisters' children' under the original act, the effect of which was to give the whole estate to surviving *children* of brothers and sisters, &c., and to leave out altogether grandchildren, the children of such as might have died.

"This would seem to follow from the well-established principle with regard to repeals by implication, which never take place unless the repugnancy between the new and the old statute be plain and unavoidable. 'A construction which repeals former statutes or laws by implication and divest long approved remedies, is not to be favored in any case.'

"It will be observed that the Act of 1855 does not refer to sect. 14 of the Act of 1833 at all.

"In accordance with these views, Judge Read, in Miller's Appeal, 4 Wright 390, declared that the Act of 1855 was ' but in fact an extension of art. 4, &c., of sect 2' (of the Act of 1833) ' to the case of collaterals; and as the first did not affect grandchildren so the second does not touch the case of nephews and nieces, nor does it repeal the eighth section except *pro tanto ;* and therefore nephews and nieces still remain in the same position as grandchildren and take *per capita* and not *per stirpes.*'

"Unfortunately, however, the question in that case was as to the *children* of deceased brothers and sisters, and not as to their *grand-children*, or as to the children of deceased uncles and aunts; while a case reported at a previous page in the same volume (Brenneman's Appeal, 4 Wright 115), determined the one question as to the latter and in precisely the opposite direction—it being there held that first cousins take *per stirpes.*

"It was argued in the present case that it was to be distinguished from Brenneman's Appeal, because here the distribution is to be made between first cousins alone, while there the widow of the decedent received one-half of the estate and the balance only went to the cousins.

"It is not easy to see the force of the distinction. If the argument is seriously made, it finds an answer in the Act of 1833 itself, in the provision which makes the widow's share paramount, the rules for distribution among either lineals or collaterals being ' subject to the interest' given to her, and not taking effect at all until she has received it.

"It may be that the attention of the court was not called to the effect to be given to sect. 14 of the Act of 1833; but so long as Brenneman's Appeal stands unreversed it is binding upon the Orphans' Court, and the rule there laid down governs the present case."

Exceptions were filed to this adjudication, which the court dismissed, when this appeal was taken.

*Charles E. Morris, William A. Marr, Henry J. McCarthy* and *William A. Porter,* for appellants.—In Brenneman's Appeal, the attention of the court was not called to the provisions of the 14th section of the Act of April 8th 1833, Pamph. L. 315. The Act of 1855 was a remedial one.

Prior to said act, children of uncles and aunts, if no nearer relatives to the intestate were living, took as next of kin and took *per capita,* but if an uncle or an aunt had been living and children of deceased uncles and aunts, the former would have taken the whole estate to the exclusion of the latter. The purpose of the act was to extend a share of the estate to the latter, they taking such share as their deceased parents would have taken if living. In other words, the Act of 1855 was only to apply when there were different degrees of consanguinity, those standing in the more remote degree taking by representation: Lane's Appeal, 4 Casey 487; Krout's Appeal, 10 P. F. Smith 380.

It is submitted that the *true* construction of the Act of 1855 requires that when all the heirs stand in equal degree of consanguinity to the intestate they share *per capita;* when in unequal degrees those more remote take *per stirpes:* Parke & Johns. Dig. 781; Miller's Appeal, 4 Wright 387; Scott on the Intestate Law 483–487. Brenneman's Appeal, *supra,* is overruled by Miller's Appeal, *supra.*

*John Thompson Spencer,* for appellee, Mrs. Dorsey.—Under the language of the Act of 1855 it seems plain that the parties in interest here, being the children of uncles and aunts, inherit the estate of their deceased first cousin *per stirpes.* The words in the act, " *by representation,*" undoubtedly mean that, both in their technical and their ordinary sense. Any other interpretation will make that statute insensible and contradictory: Brenneman's Appeal, *supra;* Lane's Appeal, *supra;* Krout's Appeal, *supra;* Person's Appeal, 28 Id. 123.

In Miller and Wife's Appeal, 4 Wright 390, the distributees, being nephews and nieces, were one degree too near the intestate to bring the case within the rule of descent laid down under the Act of 1855. If one of the nephews had been dead leaving issue, they, under that statute, would have taken their deceased parent's share *per stirpes.*

Chief Justice SHARSWOOD delivered the opinion of the court, March 24th 1879.

The Act of April 8th 1833, Pamph. L. 315, after providing in the fourth section for brothers and sisters, and nephews and nieces, declares in the seventh and eighth sections that, " in default of all persons hereinbefore described, the real and personal estate of the intestate shall descend and be distributed among the next of kin to

such intestate, provided that there shall be no representation admitted amongst collaterals after brothers and sisters children." The effect of these provisions was to exclude the grandchildren of brothers and sisters, wherever there were brothers or sisters living, and also the children of uncles and aunts, wherever there were uncles or aunts living. It was to remedy this supposed injustice that the Act of April 27th 1855, sect. 2, Pamph. L. 368, was passed. It constituted the grandchildren of brothers and sisters, and the children of uncles and aunts, additional classes of collateral heirs as contradistinguished from next of kin. It would have been very easy if it had been so intended to have framed the act, so that the fourteenth section of the Act of 1833 would have applied, that when they should all be in equal degree they should continue to take as they had done as next of kin *per capita ;* and *per stirpes* only where there were living nephews or nieces, or uncles or aunts. But the legislature, whether by design or inadvertence, did not do so, but directed, in the plainest and most explicit terms, that " the real and personal estate shall descend and be distributed among the grandchildren of brothers and sisters, and the children of uncles and aunts, by representation, such descendants taking equally among them such share as their parents would have taken if living." No one can question that by these words, as to these new classes of collaterals, the rule of representation was established whether they stood in unequal or equal degrees of relationship to the intestate. As to them the rule of the fourteenth section of the Act of 1833 was changed. How then could this court have decided otherwise than it did in Brenneman's Appeal, 4 Wright 115, unless it had assumed to change the language of the Act of 1855, in order to make the whole system uniform and harmonious. Is it at all probable that the judges who decided that case without a dissent could have overlooked the fourteenth section of the Act of 1833, as is now supposed? We think the Act of 1855 was rightly construed in Brenneman's Appeal, and on the authority of that case affirm the decree of the court below.

Decree affirmed and appeal dismissed at the costs of the appellants.