## Mary Whitaker's Estate.　Appeal of Fannie A. Robbins et al.

*Decedent's estate — Intestate laws — Representation among collaterals— Grandparents—Act of May 25, 1887.*

The act of May 25, 1887, P. L. 261, entitled " An act relating to the estates of intestates, providing that children and descendants of deceased grandparents shall represent such deceased grandparents whenever grandparents are entitled as next of kin to intestates," did not repeal the general law of 1833 relating to representation among collaterals.

The intention of the act of May 25, 1887, P. L. 261, was to meet the case of McDowell v. Addams, 45 Pa. 430, where a living grandparent was held to take to the exclusion of the descendants of a dead one.

Argued April 6, 1896. Appeal, No. 204, Jan. T., 1896, by Fannie A. Robbins and others, from decree of O. C. Phila. Co., Oct. T., 1895, No. 215, overruling exceptions to adjudication. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Exceptions to adjudication.

At the audit it appeared that decedent, a widow, died intes tate, July 7, 1894, leaving surviving no child or other issue, father or mother, uncle or aunt. Two first cousins, William Paul and Hannah A. Johnson, survived her. The former afterwards, May 5, 1895, died, leaving a will of which he constituted the accountant executor. Hannah A. Johnson survives, and is now seventy-two years of age. All of the children of decedent's uncles and aunts died before the decedent, except the said William Paul and Hannah A. Johnson.

The mother of the decedent was Sarah Van Court, who married Benjamin Adams. Sarah Van Court had eight brothers and sisters. They appear to have been born between the years 1771 and 1785, and all of them are dead. All of their children died before the decedent, except William Paul. His mother, Rachel Van Court, married David Paul on February 26, 1776. They had seven children, William alone surviving the decedent.

Benjamin Adams, the father of the decedent had nine brothers and sisters, all of whom are dead. Ann Adams, a sister, and the youngest of the brothers and sisters, married William Johnson, January 14, 1808. Five children were born of the marriage, all of whom except Hannah died before the decedent.

Proof was offered of the names of the surviving second cousins, which was rejected on the ground that they were not entitled to participate.

Exceptions to the adjudication were dismissed. PENROSE, J., filing the following opinion;

The provision in the act of 1833 limiting representation among collaterals to children of brothers and sisters was taken from the act of 1705, which, as the commissioners to revise the civil code tell us in their report to the legislature (Parke & Johnson's Digest, 782), continued to govern the distribution of estates until the passage of the act of 1794, from which it was omitted. They attributed the omission to accident, since, as they say, " the rule is of great antiquity, and . . . imperatively required now by considerations of convenience almost amounting to necessity." After stating that it is contained in the Justinian code and the English statute of distributions, and that it exists in most, if not all, of the laws of the Union, the commissioners added further: " The doctrine of representation,

or that rule by virtue of which the descendants of a deceased relation to the remotest degree, are permitted to stand in the place of their ancestor and to receive his share of an estate, if there be no others of the same degree of such deceased relation living, may be admitted without great inconvenience in the case of lineal descendants; but when it is applied to collateral kindred it is productive of serious evils. Thus, if one die leaving children, and grandchildren, the issue of a deceased child, those grandchildren, by the rule of representation, are allowed to stand in the place of their deceased parent, and to take the share of such parent; and the same principle admits great-grandchildren, and even more remote descendants, to personate their deceased ancestors, without, as already stated, any inconvenience. When, however, one dies having no lineal descendants, but collateral kindred, as brothers and sisters and their descendants, or uncles and aunts and their descendants, it is obvious that the doctrine of representation, by raising remote descendants to the level of any one of the brothers and sisters, or uncles or aunts, who happened to be living, and consequently by requiring search to be made for such descendants, who are often scattered over a large part of our country, produces great delay and often great hardships. The extension of the rule beyond the boundaries provided in the codes of foreign countries and of our own Union, has been lamented by our most eminent judges and professional persons. Considering that the present system leads to a great increase and delay of litigation, the restoration of the old rule is submitted to the legislature as a measure of wisdom and prudence."

The old rule thus wisely restored, modified by the act of 1855, extending representation to the grandchildren of brothers or sisters and the children of uncles or aunts—the modifying act being brought into harmony with the fourteenth section of the act of 1833 by the act of June 30, 1885 (see Cremer's Estate, 156 Pa. 40), has prevailed, with great benefit to the community, for more than sixty years; during which time it has been held in very many cases that first cousins take to the exclusion of second cousins: Brenneman's Appeal, 40 Pa. 115; Lindley's Appeal, 102 Pa. 235; Roger's Estate, 131 Pa. 382; Cremer's Estate, supra., etc.

It is solemnly argued, however, that notwithstanding the un-

answerable reasons for its passage, so forcibly presented by the very eminent jurists by whom it was drafted, the act of 1833 has been repealed by the act of May 25, 1887, Purd. 1069–70; that the mischief and confusion effectually prevented by the act of 1833 have been restored; and that representation among collaterals, no longer limited to grandchildren of brothers or sisters, and children of uncles and aunts, now extends indefinitely and to the remotest degree.

A result so disastrous can only be accomplished by an express repeal of the eighth section of the act of 1833, or by an enactment clearly and unqualifiedly inconsistent with it. It certainly is not attempted by the act of May 25, 1887. That act contains no words of repeal. Its title is (P. L. 261), " An act relating to estates of intestates, providing that children and descendants of deceased grandparents shall represent such deceased grandparents whenever grandparents are entitled as next of kin to intestates." The enacting clause makes no attempt to go beyond the purpose expressed by the title, as, of course, it could not do without conflicting with the constitutional restriction. It provides that " whenever by the provisions of the intestate laws of this commonwealth, it is directed that the real and personal estate shall descend to and be distributed among the next of kin to such intestate and such next of kin shall be one or more than one grandparent of such intestate, and there shall be living at the time of the death of such intestate, children or other descendants of any deceased grandparent, then the children or other descendants of any such deceased grandparent shall represent the grandparent so deceased, and shall take the share of the real or personal estate to which such deceased grandparent would be entitled to if living." All that follows in the act simply provides for the manner in which the children and descendants of " such deceased grandparent " shall share the estate with the living grandparent; the manifest intention of the act being to meet the case of McDowell v. Addams, 45 Pa. 430, where a living grandparent was held to take to the exclusion of descendants of a dead one.

All of this was said, substantially, in Bamber's Estate, 2 Dist. Rep. 536, decided more than two years ago. It has been repeated in order that the case may be more conveniently reviewed by the Supreme Court under the appeal which counsel have intimated will be taken from our ruling.

The exceptions are dismissed and the adjudication confirmed absolutely.

*Errors assigned* were in dismissing exceptions to adjudication.

*John G. Johnson* and *J. L. Long*, for appellants.—Under the construction put upon the act of 1887 by the orphans' court there is a repeal, pro tanto, of the provisions of the acts of 1833 and 1855.

In view of the fact that McDowell v. Addams was decided in 1863, it is hardly likely that twenty-four years later, in 1887, the legislature passed an act because of its desire to meet a deficiency thus pointed out to it.

There is no reason why the allowance of a representation should be confined to those cases only in which one of the grandparents survive.

The act of 1887 justifies no limitation of the right of representation to the case in which a grandparent survives.

*Wm. Rudolph Smith* and *Robert D. Maxwell*, *Harry Green* with them, for appellees, cited Brenneman's App., 40 Pa. 115.

PER CURIAM, April 13, 1896:

The questions presented in this record have been fully considered and correctly disposed of by the learned court below. On its clear, concise and exhaustive opinion, the decree is affirmed and the appeal dismissed, with costs to be paid by the appellants.