# Miles's Estate.

*Decedents' estates—Intestate laws—Representation among collaterals—First cousins—Second cousins—Acts of April 8, 1833, P. L. 316; April 27, 1855, P. L. 368; June 30, 1885, P. L. 251; May 25, 1887, P. L. 261, and June 7, 1917, P. L. 429.*

1. Under the Act of June 7, 1917, P. L. 429, where an intestate leaves no nearer kindred than first cousins and second cousins, the latter do not share with the former in the distribution of the estate.

2. Where there is a complete default of all those in whom the right of distribution is bestowed by the first nine sections of the act, but there are living three first cousins, children of two deceased aunts, and two second cousins, grandchildren of another deceased aunt, all of whom are descendants of one of the deceased grandparents of the intestate, the first cousins take to the exclusion of the second cousins.

3. By linking together the 10th, 11th and 19th sections of the Act of 1917, and considering the 12th, the proper construction is reached that, when there is no living grandparent, and first cousins of the intestate survive him, second cousins, also surviving, are not next of kin (nearest blood relations), nor can they take by representation; hence they do not take at all.

4. The Act of 1917 was not intended to change existing law and set up representation among collaterals generally.

5. Section 10 of the act merely introduces the idea, in a general way, of who, in default of the nearer kindred provided for in the earlier sections, may inherit; it does not undertake to specify under what conditions the surviving grandparents, or the descendants of dead grandparents, respectively, shall take, or in what proportions; that is left to section 12, which fully covers the ground.

6. The legislation from 1833 to 1917 on the subject of representation among collaterals, considered and explained.

*Statutes—Construction—Views of framers of laws—History of statute—General revision of laws.*

7. While courts may not resort to views expressed by those who either draft or enact laws, for the purpose of determining the meaning of the words employed therein, yet, in order to get at the old law, the mischief and the remedy, and properly to understand and construe a statute embodying the latter, the history of the enactment may always be considered.

8. When a statute under consideration is a general revision, the law, as therein written, will be deemed to be the same as it stood prior to the revision unless the courts find from the statute itself, or its history, a clear intention to change it.

Argued October 24, 1921. Appeals, Nos. 61 and 62, by Emma Marks Ross and Charles P. Marks, from decree of O. C. Allegheny Co., Nov. T., 1920, No. 171, dismissing exceptions to adjudication, in estate of Kate Miles, deceased. Before MOSCHZISKER, C. J., FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Exceptions to adjudication. Before TRIMBLE, J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed. Emma Marks Ross and Charles P. Marks, second cousins of deceased, appealed.

*Error assigned,* inter alia, was above decree, quoting it.

*William B. Secrist,* for appellants.—Section 10 is a positive enacting clause of definite and unambiguous meaning, directing that a certain class, to wit, grandparents or descendants of deceased grandparents, shall inherit and in default thereof, the next of kin.

Under that section, standing alone, all descendants of deceased grandparents not specifically provided for in preceding sections of the act would take the estate as a class, per capita.

Section 11 simply provides for a manner of inheritance among certain classes of descendants of deceased grandparents, i. e., by representation.

The portion of section 11 providing for representation in the case of grandchildren of brothers and sisters is but a repetition of the law as stated in section 9 of the act.

There is no logical reason why representation should be refused to grandchildren of uncles and aunts when it is expressly permitted under section 12 of the act in cases where there is a surviving grandparent.

There has been no judicial interpretation of the effect of these two sections together, the effect of provisions similar to section 11 having been construed only in determining next of kin under prior statutes.

*Watson B. Adair,* for Jane P. McHenry, appellee, quoted in his paper-book the notes in full of John Marshall Gest, Geo. E. Alter and Thomas J. Baldrige, commissioners, relating to sections 10, 11, 12 and 19 of the Act of 1917.

*George B. Berger,* with him *Calvert, Thompson & Wilson,* for Edward Smith and Charles P. Smith, appellees.—The legislature did not intend to alter the intestate law by the Act of 1917.

Where the codifiers give their reasons for a change in the law or make a statement that no change is intended and the legislature adopts the law as drafted by the codifiers, the courts, when called upon to construe the law, have always given great weight to their report. See McDowell v. Addams, 45 Pa. 430, and Whittaker's Est., 175 Pa. 139, in both of which cases the opinion of the court quotes from the reports of the codifiers.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 3, 1922:

The question here presented involves the right of appellants, who are second cousins, to share with first

cousins in the distribution of the estate of an intestate, there being no nearer kindred.

The Act of June 7, 1917, P. L. 429, designates the persons who are entitled to the real and personal estate of an intestate after the payment of all just debts and legal charges. The first eight sections of the statute determine the distributive shares of the spouse, issue, father and mother; and, in absence of these, the ninth section provides for a division among certain collateral heirs and kindred.

In the present case, as previously indicated, there is a complete default of all those on whom the right of distribution is bestowed by the first nine sections of the act, but there are living three first cousins, children of two deceased aunts, and two second cousins, who are grandchildren of another deceased aunt, all of whom are descendants of one of the deceased grandparents of the intestate.

Appellants contend that the inheritance falls to the first and second cousins together, each one of whom is entitled to share "per capita," as a member of a "new class of collateral heirs," under section 10 of the act before us for construction, which provides that, "in default of all persons hereinbefore described, the real and personal estate of the intestate shall descend to and be distributed among the grandparents or descendants of deceased grandparents of such intestate, and, in default thereof, to and among the next of kin to such intestate."

The part of the act just quoted is vague and indefinite; it fails either to say or suggest what possible groups of the persons indicated are to inherit, how these groups are to be ascertained, and whether those composing them take, as individuals, per stirpes or per capita. The section is evidently intended as a general one, which does not attempt to mark out the respective rights of the parties included in it. To construe this part of the act so as to bring about the results contended for by appellants

would lead to such radical departure from the historical development of our intestate law, and the system of representation there built up, that one is necessarily led to investigate the subsequent provisions of the statute, in order to find the real meaning of the portion in controversy; and, fortunately, when this is done, light is seen. Before entering upon a consideration of these other sections, however, it may be well first to trace briefly the progress of legislation, for much the better part of a century past, bearing on the question we have to solve.

Under section 8 of the Act of April 8, 1833, P. L. (1832-3) 316, 318, no representation was admitted among collaterals after brothers' and sisters' children: Parr v. Bankart, 22 Pa. 291, 295.

The Act of 1833 was followed by that of April 27, 1855, P. L. 368, which, by section 2, extended representation among collaterals to the grandchildren of brothers and sisters and the children of uncles and aunts.

The effect of the last mentioned statute was two-fold; it introduced a new class of collateral heirs, to wit, those who were too remote by one generation to take under the Act of 1833, and it substituted a per stirpes for a per capita rule of inheritance among those named in the act, even where all who inherited were of equal degree: Lane's App., 28 Pa. 487, 488. In other words, those who inherited thereunder did so not as next of kin, but as collateral heirs taking by representation (Brenneman's App., 40 Pa. 115; Hayes's App., 89 Pa. 256, 260); but this was changed by the Act of June 30, 1885, P. L. 251, which, going back to the rule that prevailed under the Act of 1833, provided by section 1 that, when those who inherited were of equal degree, they should take per capita as next of kin, the provision in question being in substantially the same language as that employed in section 19 of the present act, which we shall discuss later on.

After the Act of 1885, whenever the only persons to take were first cousins,—that is, children of uncles and aunts,—distribution was made among them per capita and not per stirpes (Cremer's Est., 156 Pa. 40); and in Rogers's App., 131 Pa. 382, distributing the estate of an intestate who died in 1886, we held that second cousins were not entitled to participate as against first cousins; see also Stewart's Est., 147 Pa. 383, 385.

Subsequently, the Act of May 25, 1887, P. L. 261, was passed; this (which is reproduced in section 12 of the present act, discussed infra) provided for cases where the intestate left a living grandparent, and the children and other descendants of a deceased grandparent, and was intended to prevent the former from taking to the exclusion of the latter; but, when there was no living grandparent, first cousins—being children of uncles or aunts—still took to the exclusion of children of deceased first cousins: Whitaker's Est., 175 Pa. 139, 141, 143.

In the case last cited, we adopted the opinion of Judge PENROSE, and, in disposing of a contention similar to the one here urged,—that the effect of the act in question was to extend, unrestrictedly, representation among collaterals,—this learned jurist traced the historical development of the intestate law to date, and, after showing the grave dangers of such a system of unlimited representation, said: "The old rule [of limited representation]......has prevailed with great benefit to the community for more than sixty years; during which time it has been held in very many cases that first cousins take to the exclusion of second cousins (Brenneman's App., 40 Pa. 115; Lindley's App., 102 Pa. 235; Rogers's Est., 131 Pa. 382; Cremer's Est., 156 Pa. 40). It is [here] solemnly argued, however, that......[the rule] has been repealed by the Act of May 25, 1887, that the mischief and confusion effectually prevented by the Act of 1833 have been restored, and that representation among collaterals......now extends indefinitely and to

the remotest degree.   A result so disastrous can only
be accomplished by an express repeal of the eighth sec-
tion of the Act of 1833 or by an enactment clearly and
unqualifiedly inconsistent with it; it certainly is not at-
tempted by the [present] act."

With the law in the condition indicated, the Intestate
Act of 1917 was passed.   While section 10 of this stat-
ute provides that, in default of other and nearer kin, the
estate of an intestate shall descend to "grandparents or
descendants of deceased grandparents," it is evident from
the other parts of the act that this is intended in a gen-
eral sense and as merely introductory to subsequent,
more specific, provisions, particularly section 12, which
continues the existing rule laid down in the Act of 1887,
supra, that, when a living grandparent is nearest of kin
to an intestate and, at the time of the latter's death,
there are also alive descendants of a deceased grand-
parent, these descendants represent the latter and share
the estate of the intestate with the surviving grand-
parent, in the manner specifically provided.

When sections 10 and 12 are read together, we see
that it never was intended by the former to change the
established policy of our law and set up unlimited rep-
resentation among collaterals generally (this conclu-
sion is reinforced by a consideration of certain other sec-
tions, which we shall presently discuss) ; nor was it
specifically intended that, with first cousins of an intes-
tate alive, second cousins should inherit as representing
their parents, or otherwise,—which parents, we may re-
mark, would be first cousins to the intestate, in the same
class with other first cousins, and, if alive, entitled
to inherit with them,—but if we take the words as they
stand in section 10, without reference to other parts of
the act, and give them controlling significance, as ap-
pellants would have us do, this construction, carried to
its logical conclusion, would mean that both first and
second cousins should take at the same time, and, since
the language there employed does not say the estate

shall go to such of the descendants of deceased grandparents as may be nearest of kin to the intestate, but simply,—without limitation,—that it shall go to "descendants of deceased grandparents," this might, in many cases, lead, in effect, to children representing their living parents, which, of course, is contrary to the per stirpes rule: Shoch's Est. (No. 2), 271 Pa. 165. Parts of the act subsequent to section 10, however, forbid any such distribution as contended for by appellants; and thus we see that the section in question cannot have the meaning they would give to it.

While section 12, already referred to, extends somewhat the principle of representation among collaterals taking thereunder, yet the provisions of that section apply only where "one or more than one grandparent" is alive and entitled to take at the death of the intestate; and the extended representation there provided for is confined to "children or other descendants of any deceased grandparent," when, and only when, they share the estate involved with a surviving grandparent. Section 10 merely introduces the idea, in a general way, of who, in default of the nearer kindred provided for in the earlier sections, may inherit; it does not undertake to specify under what conditions the surviving grandparents or the descendants of dead grandparents, respectively, shall take, or in what proportions; that is left to section 12, which fully covers the ground.

Section 11 reënacts the rule provided in earlier legislation, that "the grandchildren of brothers and sisters and the children of uncles and aunts shall be entitled to take by representation the shares......which their parents would have taken if living"; but it expressly states that, "except as hereinafter provided, there shall be no [other] representation admitted among collaterals"; the words "as hereinafter provided" evidently having application to the representation among descendants of a dead grandparent referred to in section 12, and before discussed in this opinion.

The part of the act now under consideration, section 11, apparently deals with the phase of the principle of representation which determines who are entitled to take, and not with its other phase,—how division shall be made among those so entitled; the latter aspect of the matter seems to be provided for by section 19, as follows: "Whenever real or personal estate shall descend to or be distributed among several persons, whether lineal or collateral heirs or kindred, standing in the same degree of consanguinity to the intestate, if there shall be only one of such degree, he shall take the whole of such estate, and if there shall be more than one, they shall take in equal shares, and, if real estate, shall hold the same as tenants in common."

The provision, just quoted, that lineal or collateral heirs standing in the same degree of consanguinity to the intestate shall take in equal shares, when read with the provision in section 11, that "there shall be no representation admitted among collaterals after the grandchildren of brothers and sisters and the children of uncles and aunts," shows plainly that the 10th section, depended on by appellants, cannot be given the effect of setting up unlimited representation among collaterals; nor can it be construed to set up a new class of collateral heirs, who, although of different degrees, all being "descendants of deceased grandparents of the intestate," would take equally the estate of the latter, as contended by these second cousins,—such a scheme of distribution is so unusual in our law as to require plain and unequivocal language to establish it (Whitaker's Est., 175 Pa. 139, 143), which we do not find here.

In Hayes's App., 89 Pa. 256, 260, construing that part of the old law which provided, "there shall be no representation admitted among collaterals after brothers' and sisters' children," we said its effect was "to exclude children of uncles and aunts wherever there were uncles and aunts living"; so the effect of the words, "there shall be no representation admitted among col-

laterals after......the children of uncles and aunts," contained in the present act, is to exclude grandchildren of uncles and aunts (the position occupied by the present appellants) wherever there are children of uncles or aunts living.

We agree with the court below that "a clear view of the legislative intent is found by linking together the tenth, eleventh and nineteenth sections of the act [and considering the twelfth]. It then appears that, when there is a lapse of all of those in succession to the intestate provided for in the other sections, the descendants of deceased grandparents inherit,......[but when there are] cousins german......, [being] in the same degree of consanguinity, they take the whole of the estate in equal shares; and this view of the legislative intent precludes a distribution to the second cousins." In short, when there is no living grandparent, and first cousins of the intestate survive him, second cousins, also surviving, are not the next of kin (nearest blood relations), nor can they take by representation; hence they do not take at all.

The Act of 1917 was the result of the efforts of a commission, appointed by the governor of the Commonwealth, to codify, or assemble into one group, the numerous provisions on our statute books dealing with the intestate law and kindred matters; and the commission itself framed the act. The bill thus prepared was passed by the legislature without the slightest deviation from the recommendations of its draftsmen, so far as the portions having any bearing on this case are concerned; and, when the historical development of this branch of our statutory law is considered, together with the whole structure of the present statute, it is apparent that no radical changes or departures from preexisting rules of inheritance were intended. On the contrary, the mischief to be corrected lay in the fact that there were too many acts covering the subject-matter, not that the rules there laid down were either wrong or undesirable, and

the remedy intended, at least as to the sections here involved, was simply their codification, or putting together, in a single act. Of course, this combination of various legislative enactments into one statute necessitated the insertion of certain introductory parts, and, as already said, section 10 is of that nature; it must be taken with the other parts, to which it is introductory, in order to ascertain its true meaning.

While it is well settled that courts may not resort to views expressed by those who either draft or enact laws, for the purpose of determining the meaning of the words employed therein (see opinion of the court below in Com. v. Mathues, 210 Pa. 372, 392, and authorities there cited), yet, in order to get at the old law, the mischief and the remedy, and properly to understand and construe a statute embodying the latter, the history of the enactment in question may always be considered; and when the statute under consideration is a general revision, "the law as therein written will be deemed to be the same as it stood prior to the revision, unless we find from the statute itself, or its history, a clear intention to change it": In re Lis's Est., 139 N. W. 300, 302, and cases there cited; see also authorities in 36 Cyc. 1223.

The United States Supreme Court has recently decided, in Duplex Printing Press Co. v. Deering, 254 U. S. 443, that the report of a committee, having a bill in charge during its passage, "may be regarded [judicially] as an exposition of the legislative intent in a case where otherwise the meaning of a statute is obscure"; but it is not necessary to express our view on this point or resort to such an expedient in the case at bar, for, as already shown, when the history of the legislation and all cognate parts of the present act are considered together, the meaning of the statute becomes reasonably clear. We may add, however, that when the report of the commission which drafted the present act is examined, to ascertain what that body was endeavoring to express (a course pursued by this court in McDowell v. Addams,

45 Pa. 430, 433, when construing the old Intestate Act of 1833; see also Whitaker's Est., 175 Pa. 139, 140-2, and In re Lis's Est., supra), it is of interest to observe that the notes, on the several sections of the act to which we have referred in this opinion, show the intention of the original draftsmen, so far as the meaning of these parts are concerned, is borne out in the construction placed upon their work by the court below, and concurred in here.

The decree is affirmed; costs to be paid out of the estate.