## Reichard, etc., Company v. Lehigh Valley Railroad Company.

*Interstate commerce—Act of Congress of Aug. 29, 1916—Order bill of lading—Negotiation—Rights of holder.*

An order bill of lading, issued by carrier under instructions from the shipper to hold the goods until such time as shipper gave orders for forwarding, was thereafter negotiated, and on suit against the carrier by the holder of the order bill of lading, on a claim for shrinkage in weight and value, it was held, under the Act of Congress of Aug. 29, 1916, 36 Stat. at L. 538 (Interstate Commerce): 1. That section 8, providing that a carrier, in the absence of a lawful excuse, is bound to deliver the goods to the holder of an order bill of lading, does not require the carrier to deliver, in the absence of order for shipment, even though the order bill of lading has been issued and endorsed over to the holder. 2. That section 31, providing for transfer of title to the endorsee of an order bill of lading, and creating an obligation in the carrier to hold possession of the goods for him, creates no more than an obligation of the carrier to the holder "according to the terms of the bill." 3. That section 39, forbidding a seller's lien or right of stoppage *in transitu*, does not preclude a contract between the shipper and carrier to withhold shipment of the goods, to which contract the holder of an order bill of lading becomes a party by purchase of the bill, it being provided that the carrier should not be held responsible for damages caused by the act of the shipper. 4. In a suit in *assumpsit* upon a bill of lading instituted by the holder thereof against the carrier, such holder is bound by the terms thereof, and if the damages complained of were due to the act of the shipper, the clause of the bill exempting the carrier from liability for damages caused by the act of the shipper will prevent recovery.

*Assumpsit.* Motions for new trial and for judgment *n. o. v.* C. P. Lehigh Co., June T., 1919, No. 67.

*Aubrey, Steckel & Senger*, for plaintiff; *Butz & Rupp*, for defendant.

RENO, J., May 15, 1922.—On July 28, 1917, George E. Mosser, hereinafter called the shipper, delivered to the Lehigh Valley Railroad Company, herein-

1 D. & C.

after called the carrier, at its depot in Allentown, Pa., a consignment of hides for shipment to himself at Newark, N. J. The carrier issued an order bill of lading, wherein it recited that the goods were "consigned to the order of George E. Mosser: destination, Newark, N. J.: Notify Reichard Hide and Tallow Company at Ashland, State of Pa." At the same time the shipper instructed the carrier to hold the goods at Allentown until such time as he gave orders for forwarding them to Newark. Of this order a notation was made upon the shipping order (which seems to be a copy of the bill of lading retained by the carrier), but none upon the bill of lading delivered to the shipper. Thereafter the shipper endorsed the bill of lading in blank, attached a sight draft to it, placed it in a bank for collection, and on Aug. 6, 1917, the draft was taken up and paid by the Reichard Hide and Tallow Company, plaintiff, and hereinafter called the holder, and to it the bill of lading was delivered. On Aug. 11, 1917, the shipper instructed the carrier to transport the goods to, and the goods were started to their destination on Aug. 12th and arrived at Newark on Aug. 13, 1917. Prior thereto, on Aug. 7, 1917, the holder, or some one on his behalf, had presented the bill of lading to the carrier at Newark and demanded delivery of the goods, but they had not then arrived and did not arrive until the date stated. The time generally and ordinarily necessary to ship goods from Allentown to Newark is two or three days. The claim is for shrinkage in the weight and value of the hides, caused, it is alleged, by the failure of the carrier to transport the goods immediately upon delivery to it.

These facts were developed upon the trial of the case before the late judge, Hon. Milton C. Henninger. At the conclusion of the plaintiff's case, the defendant submitted no evidence, but presented a number of points to the court. The court, holding "that the Lehigh Valley Railroad Company cannot be held for this delay because of that order not to ship," directed a verdict for the carrier. We are now asked to order a new trial or to enter judgment for plaintiff *n. o. v.*

The transcript of the evidence does not contain all of the bill of lading. Only that portion of the bill of lading which is printed upon the face of the bill has been transcribed. The conditions printed on the reverse side are omitted from the record. However, we assume that the points presented by the defendant substantially stated these conditions, and for the purpose of this opinion we assume that upon the back of the bill were printed the following conditions: "*(a)* No carrier or party in possession of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, or the act or default of the shipper or owner, or for differences in the weights of grain, seed or other commodities, caused by natural shrinkage or discrepancies in elevator weight." "*(b)* The carrier shall not be liable for loss, damage or delay occurring while the property is stopped and held in transit upon request of the shipper, owner or party entitled to make such request."

The bill having been issued for the transportation of goods from "a place in one state to a place in another state," after Jan. 1, 1917, is to be interpreted under the Act of Congress approved Aug. 29, 1916, chap. 415, 39 Stat. at L. 538. The bill is an order bill of lading within the meaning of that act, and is, therefore, negotiable. The bill was in fact negotiated, and the whole controversy revolves about the effect to be given to the quality of negotiability of the bill in the form in which it was written.

Plaintiff contends that when a carrier issues an order bill of lading, it must immediately transport the goods, that it may not recognize the shipper's

instructions to hold the goods subject to the shipper's order to transport, and that if it does recognize such order, the terms of the bill will not protect it in an action by the holder. In other words, he contends that, as against the carrier, the holder has greater rights than the shipper, and that these rights accrue to him because of the negotiable character of the bill. The defendant, of course, contends that the holder is bound equally with the shipper to the terms of the bill, and that these terms are sufficient to defeat recovery.

It is manifest that the provisions of the bill quoted would be sufficient to prevent recovery by the shipper. The loss, damage or delay occurred while the property was stopped or held upon request of the shipper. The loss or damage or delay was caused by the act of the shipper. It was shipper's order to hold that was directly responsible for the delay and the loss thereby entailed. Hence, if plaintiff can recover, it will be because he is not bound by the terms of the bill, and because the holder's rights against the carrier are greater than those of the shipper. Thus, he can recover only if he shows that in an order bill of lading there inheres a quality of negotiability that gives him greater rights against the carrier than those expressed by the tenor of the bill. This he endeavors to do by an argument based largely, if not entirely, upon the construction to be given to the provisions of the Act of Congress.

In a recent case it is said that the purpose of certain sections of the Act of Congress "is to give bills of lading attributes of commercial paper:" Pere Marquette Ry. Co. v. J. F. French & Co., 254 U. S. 538; s. c., 41 Supreme Court Repr. 195. But the attributes thereby to be given are undoubtedly only those expressly conferred by the text of the act, and the word "negotiable," as therein used, does not enlarge the quality of their negotiable character beyond the plain words of the act. Unaffected by statute, the effect of a transfer of a bill of lading was to pass title to the goods represented by it as effectually as though the goods themselves were delivered: 10 Corpus Juris, § 265, page 201. No statute is to be construed as altering the common law further than its words import: Shaw v. Merchants' National Bank, 101 U. S. 557; s. c., 25 Law. Ed., 892; Lis's Estate, 139 N. W. Repr. 300. If, therefore, greater effect is to be given to the act of transferring or negotiating a bill of lading, either order or straight, the party claiming such greater effect must establish it by the terms of the act.

It is argued that the 8th section does so provide. That section provides that a carrier, in the absence of a lawful excuse, is bound to deliver the goods to the holder of an order bill. But is it not a lawful excuse that the carrier was restrained by the act of the shipper, in view of the stipulation to that effect upon the bill of lading? To our mind, a lawful excuse, within the meaning of the act, is an act which the original parties to the bill have stipulated shall excuse the carrier. If the holder is not bound by the provision exempting the carrier from damages caused by the act of the shipper, neither is he bound by other provisions, and then it would follow that, as against the holder, a carrier could not defend against damages "caused by the act of God or the public enemy."

Thus, by legislation purporting to relate only to bills of lading, by implication and by indirection, the liability of carriers has been enlarged, making them practically absolute insurers of the goods they carry. It is not to be supposed that such was the intention of Congress. Moreover, if the holder is not bound by the clauses of the bill which stipulate for "lawful excuses," a fortiori, he is not bound by others. Then it would follow that he might sue a carrier without previously furnishing a statement of his claim to the carrier

or sue at a time beyond that stipulated for the bringing of actions. When carried to its logical conclusion, the argument becomes obviously untenable. We are forced by this course of reasoning to hold that the act of the shipper is a "lawful excuse" within the meaning of the act, and that the holder is bound by the stipulation which exempts the carrier from damages caused by the act of the shipper. Rightly understood, section 31 is not at variance with the views we have already expressed. That section provides: "That "a person to whom an order bill has been duly negotiated acquires thereby *(a)* such title to the goods as the person negotiating the bill had; . . . *(b)* the direct obligation of the carrier to hold possession of the goods for him, according to the terms of the bill, as fully as if the carrier had contracted directly with him." It is obvious that the first sub-section does no more than recognize the effect at common law of the transfer of a bill of lading *(cf.* Williston on Sales, § 415, *et seq.),* and that the second sub-section makes available to the holder, as against the carrier, the rights of the holder as an assignee of the contract. That is, the carrier is bound to hold the goods for the holder. It may not deliver them to any one but the holder. But the obligation of the carrier to the holder is "according to the terms of the bill." The irresistible conclusion is that the holder is bound by the terms of the bill, and that if delivery is postponed because of the act of the shipper, or by the act of God, or by the act of the public enemy, the holder cannot hold the carrier in damages.

But it is claimed that the act of the shipper was an exercise of his right to a seller's lien. That is, the carrier, by obeying the instructions of the shipper, allowed the shipper to withhold delivery of the goods until he had been paid for them. It is argued that this was a violation of section 39 of the act hereinafter quoted, and that, since there is no right to the exercise of the seller's lien or of stoppage in transit of goods covered by an order bill, the act of the shipper is not a lawful excuse. Section 39 follows: "Where an order bill has been issued for goods, no seller's lien or right of stoppage *in transitu* shall defeat the rights of any purchaser for value in good faith to whom such bill has been negotiated, whether such negotiation shall be prior or subsequent to the notification to the carrier who issued such bill of the seller's claim to a lien or right of stoppage *in transitu;* nor shall the carrier be obliged to deliver or justified in delivering the goods to an unpaid seller unless such bill is first surrendered for cancellation." It will be observed that this section contains two distinct sentences, and that the goods not having been delivered by the carrier to the shipper, the second sentence does not apply to the instant case. The first sentence protects the holder against the exercise of the right of stoppage *in transitu* by providing that the holder's rights shall not be thereby defeated. But what are the rights which shall not be thus defeated? It is easy to answer that the holder has a right to reasonably prompt transportation of the goods covered by the bill. Unquestionably that is his right. But certainly that right can be extinguished or altered by a contract between the shipper and the carrier, to which contract the holder becomes a party by purchase of the bill. It may be conceded that the holder has a right, as against the carrier, to reasonably prompt transportation, but this concession cannot alter the fact that the very same document whereby the holder comes into the possession of that right also provides that the carrier should not be held responsible for damages caused by the act of the shipper.

In the consideration of this question we have not been unmindful of the manifest intention of the framers of the act. Undoubtedly its purpose was to afford a large measure of protection to purchasers of, and lenders upon, this class of securities. See Report of Senate Committee on Interstate Commerce,

quoted; 1 Roberts's Federal Liabilities of Carriers, § 351. But if it was the intention to give to the holder a right against the carrier superior to the right of the shipper, the legislation is, in our judgment, ineffectual to that end. Indeed, it is to be questioned whether that was the end sought; for, following the example of the Supreme Court (Miles's Estate, 272 Pa. 329), we have examined the minutes of the proceedings of the Senate committee in charge of the legislation, and we are persuaded that the intention of the original draftsman is borne out in the construction which we have given to the act. The following colloquy between Senator Porerene and Professor Williston is illuminating:

Senator Pomerene: "Your position is that in that respect, then, the transferee of the bill of lading will be essentially different from that of the original consignor?" Professor Williston: "A bill of lading is both a contract and a symbol of title to the goods. In so far as it is a contract, it is a contract of the railroad company, and B (the transferee) gets the contract rights which the consignor bargains for against the railroad company."

It has been suggested that the carrier, having accepted the goods for transportation at a future time, should not have issued a bill of lading, and, in lieu thereof and pending transportation, it should have issued a warehouse receipt. Without undertaking to decide this question, it is a sufficient answer that the present suit is founded upon the bill of lading. The same answer must be made to the contention that the act of the carrier in holding the goods constituted a conversion of them. The action was in *assumpsit*. The bill of lading was introduced in evidence by plaintiff. Recovery was sought by virtue of it. The contractual relation between the parties was the basis of the suit. It requires no citation of authorities to support the proposition that a plaintiff, even in an action instituted before a justice of the peace, cannot recover damages for a tortious conversion of goods in an action founded upon contract. Our conclusion is that in a suit upon a bill of lading, instituted by the holder thereof against the carrier, such holder is bound by the terms thereof, and that if the damage complained of was due to the act of the shipper, the clause of the bill exempting the carrier [from liability] for damages caused by the act of the shipper will prevent recovery. Accordingly, the rulings of Judge Henninger at the trial were correct; and

Now, May 15, 1922, motions for new trial and for judgment *n. o. v.* are overruled and dismissed.

From James L. Schaadt, Allentown, Pa.