## Jennings' Estate

*Martin V. McGuire*, for accountant.

*B. V. O'Hare, J. F. Mahoney* and *C. W. Staudemeier*, for heirs at law.

GANGLOFF, P. J., February 26, 1934.—Catharine Jennings died on May 2, 1931, having first made her last will and testament, which was duly probated in the office of the Register of Wills of Schuylkill County on May 8, 1931, and letters testamentary were granted thereon to the accountant on the same date.

The decedent left no spouse to survive her or any issue.

The decedent, in her said last will and testament, disposes of her entire estate

as follows: She bequeaths the sum of $250 and her diamond ring to Mary Langton Byron; the sum of $250 to Elanore Langton; the sum of $250 to Julia Horan, and the sum of $250 to Bridget Durkin; she directs her executor "to dispose of four gold watches and several rings not otherwise disposed of, by having them converted into a chalice for the celebration of Mass and direct that it be presented to The Annunciation Church, Shenandoah, Schuylkill County, Penna."

After making the foregoing bequests, the testatrix directs her executor to convert her entire estate into money, and in this direction to convert she includes all her real estate, giving the executor full power to make sales and execute the proper deeds to the purchaser or purchasers, and upon such conversion the testatrix directs that the money realized therefrom shall be disposed of as follows: "My executor hereinafter named, shall expend the sum of $2750.00 for masses for the repose of the souls of the following named, my father, John Jennings, my mother, Nora Jennings, my sister, Alice Jennings, my brother, John Jennings, my sister, Mary A. Jennings, my paternal grandfather, Peter Jennings, my paternal grandmother, Mary Jennings, my maternal grandmother, Catharine Brennan, my maternal grandfather, James Brennan, my Uncle, Michael Jennings and lastly myself, Catharine Jennings, and I do further direct that this sum shall be expended by the payment of $250.00 on behalf of each of the above named and I do further direct that the money shall be paid for Low Masses only and that the following priests of the Catholic Church shall say them and share equally in the distribution of the said money for masses; Father James Craven, Father Michael Munley, Father Thomas Fitzgerald, The Rev. Dr. Joseph McDermott, the Rev. Dr. Patrick Reilly of California, Father Boyle of Tuscarora, Penna., Rev. Dr. Frank Brennan and Father Durkin who assisted in celebration of the Funeral Mass of my sister Mary A. Jennings."

Finally the testatrix directs that "the remaining portion of my residuary estate shall be expended by my executor, hereinafter named, in erecting memorials to the memory of the following named; my father, John Jennings, my mother, Nora Jennings, my sister, Alice Jennings, my brother, John Jennings, my sister, Mary A. Jennings and lastly myself Catharine Jennings.

"And I do further direct my executor, hereinafter named, that these memorials shall be erected in Roman Catholic Churches only; but I direct that the churches and memorials erected shall be selected by the exercise of his discretion with the restriction above named."

Counsel for the next of kin of decedent contend that the bequest to the Annunciation Church, the bequest of $2,750 for masses, and the bequest of the residuary estate for erection of memorials are bequests for religious or charitable purposes and therefore void under the Wills Act of June 7, 1917, P. L. 403, 406, the will having been executed but 2 days before the death of decedent. Counsel for the estate concedes that the first and second of the bequests just mentioned are for religious or charitable purposes and therefore void under the Wills Act of 1917, but he does not agree that the bequest of the residuary estate is for religious or charitable purposes.

Decedent's will bears date April 30, 1931, and she died on May 2, 1931, 2 days later. It is quite obvious then that she died within 30 days of the date of her will.

Section 6 of the Wills Act of 1917, P. L. 403, 406, provides:

"No estate, real or personal, shall be bequeathed or devised to any body politic, or to any person in trust for religious or charitable uses, except the same be done by will attested by two credible, and, at the time, disinterested witnesses, at least thirty days before the decease of the testator; and all dispositions of

property contrary hereto shall be void and go to the residuary legatee or devisee, heirs or next of kin, according to law. . . ."

The above-quoted act is practically the Act of June 7, 1911, P. L. 702, changed so far as to apply to wills only, and the old act on the subject is that of April 26, 1855, P. L. 328. The question at issue is whether any or all of the three bequests above referred to are bequests for religious or charitable uses. If any one of them is for such purpose, then, of course, such bequest is void under the act.

First, as to the bequest to the Annunciation Church: We have examined the various items in the general inventory and appraisement, as well as the items found after the original inventory was filed and as disclosed in the account, and nowhere do we find, as part of the assets of the estate, gold watches or rings or, in fact, any jewelry whatever. The bequest being a specific one, how could the executor carry it into effect in the absence of the gold watches and rings out of which the chalice was to be made? So, from that standpoint alone, the bequest falls. However, on the other hand, we have no doubt that this bequest is for religious uses. The very language of the bequest plainly shows that the gift is to be used in the celebration of mass, and, for reasons given below, a bequest for masses is a bequest for religious or charitable purposes.

Second, as to the bequest of $2,750 for masses: Counsel for the estate agrees with counsel for the next of kin that this is a bequest for religious or charitable uses and therefore void under the statute and the facts here prevailing. It is indeed unnecessary to enter into a lengthy discussion to support the conclusion so agreed upon. We are satisfied that this bequest is for religious purposes and therefore void under the facts here. This conclusion is clearly supported by Rhymer's Appeal, 93 Pa. 142, O'Donnel's Estate, 209 Pa. 63, Kelly's Estate, 9 Dist. R. 387, and Loughran's Estate, 2 D. & C. 223.

Third, and lastly, as to the bequest of the residuary estate for the erection of memorials: The testatrix very plainly directs that the memorials are to be erected in memory of herself, her parents, her sisters, and her brother; that the memorials shall be erected in Roman Catholic churches only; and that, with these restrictions, the particular churches and the type of memorials shall be left to the discretion of the executor. In other words, the memorials must be erected in Roman Catholic churches in memory of testatrix and the designated members of her immediate family. The mere fact that the memorials are to be erected in memory of the testatrix, as one of the individuals named, is not of itself sufficient to alter its public and charitable or religious character, if in fact the gift has such character: Archambault's Estate, 308 Pa. 549, 555, and cases there cited. "The true test of a legal public charity is the character of the object sought to be attained, the purpose to which the gift is to be applied; not the motive of the donor": Fire Insurance Patrol v. Boyd, 120 Pa. 624, cited with approval in Archambault's Estate, supra, p. 555. How could the memorials be erected as directed by testatrix, except in keeping with the objects of the Roman Catholic Church? To say that the executor may attempt to erect memorials not in keeping with the objects of that church would indeed be a violent assumption. Both reason and the general intent of the testatrix, as plainly expressed in her will, take such an assumption out of the realm of our discussion.

" 'Whatever,' . . . 'is given for love of God, or for the love of your neighbor, in the catholic and universal sense—given from these motives and to these ends, free from the stain or taint of every consideration that is personal, private or selfish,' is a gift for charitable uses. 'The love of God is the basis of all that is bestowed for His honor, the building up of His Church, the support of His ministers, the religious instruction of mankind. The love of his neighbor is the principle that prompts and consecrates all the rest. The current of these two great

affections finally run together, and they are at all times so near that they can hardly be said to be separated' ": Miller et al. v. Porter et al., 53 Pa. 292, 298, quoting from Price et al. v. Maxwell et al., 28 Pa. 23. Applying these principles to the case at bar, isn't it true that memorials, notwithstanding they are to be erected in memory of certain individuals, are for "the building up of His Church", whether that church be the Roman Catholic Church or some other church that exists as a charitable institution in the legal sense? Such memorial may take the form of a memorial window in the church building, and this has been held to be for a charitable use: Becker's Estate, 28 Dist. R. 695; or it may take the form of a free pew, and this has been held to be for a religious use: Archambault's Estate, supra.

For our purposes, it may be stated that a gift of property to be lawfully applied for an indefinite number of persons by bringing them under the influence of religion is prima facie charitable in the legal sense. The memorials may be in the form of a free pew or a pipe organ, a chalice or a chancel, a cup or a cupola, a door or a window, each having the name of the donor inscribed thereon, and yet all would be essential parts of church edifices or essential in the work of the church and in keeping with religious uses and purposes, and all for the benefit of an indefinite number of persons. And, we repeat, the marking of the bequest with the donor's name or some other name designated by her "which might savor of pride and selfishness does not take from the bequest its charitable character, for the true test of a legal public charity is not the motive of the donor, but the object or purpose sought to be attained": Becker's Estate, supra.

After careful consideration of the question here presented, in the light of the authorities above cited and others that could be cited, we have no hesitation in concluding that the bequest of the final residuary estate for the erection of memorials in Roman Catholic churches is a bequest for religious or charitable uses, and the bequest is therefore void under the Wills Act of 1917, supra, and the facts here prevailing.

There is no residuary clause other than the one above mentioned, and it therefore follows that the entire estate other than the specific cash bequests given to individuals directly, as hereinbefore designated, vests in the next of kin of the decedent under the intestate laws.

Testimony, both orally before this court and in the form of depositions, was taken to ascertain the next of kin of decedent. We find that the nearest of kin to decedent are second cousins, or, in other words, children of first cousins, grandchildren of uncles or aunts. Under these facts, we shall not include as next of kin entitled to share in the estate any issue of deceased second cousins, for the reason that, under section 11 of the Intestate Act of June 7, 1917, P. L. 429, representation among collaterals after grandchildren of brothers and sisters and children of uncles and aunts is prohibited, and we shall also be controlled by section 19 of the same act, which provides that persons in the same degree of consanguinity take equally. The principles applicable and by which this court also is guided are set forth in Miles' Estate, 272 Pa. 329, Wightman's Estate, 30 Dist. R. 885, Brodie's Estate, 30 Dist. R. 654, and Sterner's Estate, 14 Leh. L. J. 48. The next of kin will include not only the paternal side but also the maternal, as the rule of inheritable blood was abrogated by section 13 of the Intestate Act of 1917. . . .

NOTE.—The balance of the opinion and decree is omitted for the reason that it deals only with items in the account, followed by a decree of distribution in accordance with the above findings.                    From M. M. Burke, Shenandoah, Pa.