Conner's Estate (No. 2).

Argued February 5, 1935.   Before Frazer, C. J., Simpson, Schaffer, Maxey, Drew and Linn, JJ.

*J. Weinman Cratty,* with him *George A. Shutack,* for appellant.

*Charles M. Bolich,* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 25, 1935:

Facts cognate to the facts out of which this case arises are detailed in the opinion this day filed and indexed to "No. 220, January Term, 1935." We are concerned here only with the interpretation of the 18th paragraph of the will of Robert B. Conner, who died on September 13, 1921, leaving a will dated February 24, 1921, and an estate worth about $600,000. This entire 18th paragraph is set forth below in a footnote.* The question for ad-

---

* Eighteenth.—At and immediately after the death of all my nephews and nieces, to wit, William L. Conner, Josephine V. Remmel, and Minnie Conner, my executor and trustee hereinafter named, is authorized and directed to convert all the remainder of my estate, real, personal and mixed, into money with the exception of such securities which any of my said residuary legatees might desire not to have sold but distribution thereof made in kind and which I devise and bequeath as follows: One-half thereof to the Mauch Chunk Trust Company, of Mauch Chunk, Pennsylvania, in trust, to have and to hold and invest the same from time to time and to make distribution of the income from time to time among such poor as the said Trust Company may deem most deserving, or pay the income from time to time to such churches, societies or committees of Mauch Chunk, who will care for the poor and be willing to make distribution of said income among them under the directions of the Mauch Chunk Trust Company, or the successor thereof, and will render proper accounts to the said Trust Company of the funds received and to whom paid by them. And the other one-half I give and bequeath to the issue or children of my nephews and nieces hereinafter named, to wit, the children of Harry K. Conner, William Conner, Josephine V. Remmel and Minnie Conner, in equal shares, namely, one-fourth of said one-half share thereof to the children of Harry K. Conner; one-fourth share to the children of William L. Conner; one-fourth share to the children of Josephine V. Remmel, and the remaining one-fourth share thereof to the children of Minnie Conner, and their heirs and assigns. Should any of my nephews or nieces die without leaving issue, then the same to be divided among the issue or children of my remaining nephews and nieces leaving issue or children to survive them, and their heirs and assigns."

judication now is whether the distribution of "the other one-half of the remainder" of testator's estate (see last two-fifths of the will's 18th paragraph) should be made to the legatees *per capita or per stirpes*. This "other one-half" will hereinafter be designated as *the res* and the applicable two-fifths of the 18th paragraph will be designated as *the will*. When the testator died, his next of kin, to the second and third generations were his nephew, (1) William L. Conner, and his nieces, (2) Josephine V. Remmel, and (3) Minnie Conner Gross, (these three being cousins of one another) ; and three *grand*-nephews, (a) Roy B. Conner, (b) William C. Conner, and (c) Philip B. Conner, these being the children of testator's nephew, Harry K. Conner, who predeceased testator; and a *grand*-niece (d) Ruth V. Nace, daughter of "(3)," Minnie Conner Gross. In earlier portions of the *complete will* the testator had amply provided life incomes for his nephew "(1)" and his nieces "(2)" and "(3)," and in the 18th paragraph he provided that distribution of the estate should be made *after this nephew and these two nieces had died* (which they have) and that distribution should be made in certain proportions. What these are is the question posed. The present controversy arises from the fact that William L. Conner (testator's nephew) and Josephine V. Remmel (testator's niece) died without leaving issue, and by the death of either of these (i. e., "any of [testator's] nephews or nieces") the last sentence of the will became operative and what testator therein referred to as "the same" has "to be divided among the issue or children of [testator's] remaining nephews and nieces leaving issue or children to survive them, and their heirs and assigns." The distributees are the following: (AA) the three minor grandchildren of testator's niece, Minnie Conner Gross (No. 3, supra), deceased, who left one child, Ruth V. Nace, who died on April 25, 1932. The shares of these three children are held by the Lehigh Title Guarantee Company, in trust, under indentures of trust dated December 6, 1930, and April 28, 1931, between

Ruth V. Nace and the Penn Trust Co., predecessor in trust to the Lehigh Title Guarantee Company. (See opinion this day filed and referred to in the opening sentence.) (BB) Roy B. Conner (the appellant); (CC) William C. Conner; and (DD) Philip B. Conner; these last three named being grand-nephews of the testator, and brothers to one another. (Philip B. Conner assigned his interest to J. Weinman Cratty.)

To clarify the discussion it may be stated that if Ruth V. Nace had not died and had not before her death assigned her share of the res to the trust company, and if Philip B. Conner had not assigned his share to J. Weinman Cratty, the claimants would be: *Ruth V. Nace,* grand-niece of testator; and her cousins, the brothers: *Roy B. Conner, William C. Conner,* and *Philip B. Conner,* testator's grand-nephews.

It is the contention of appellant that since the last sentence of the will has become operative the res must be divided *equally,* i. e., *per capita,* among (a) Roy B. Conner, (b) William C. Conner, (c) Philip B. Conner's assignee, and (d) the Lehigh Title Guarantee Company, as trustee for the minor children of the deceased Ruth V. Nace (the former "(d)"), (these three minors being the grandchildren of "(3)" Minnie Conner Gross, also deceased). Appellant says that he and his two brothers, and the trust company which represents the interests of the children of his cousin, (testator's grand-niece) Ruth V. Nace, should *each* receive one-fourth of the res. The trust company claims that this res should be divided *per stirpes,* i. e., it, as trustee for the three minor children of Ruth V. Nace, should have *one-half* of it, and the *other half* should be divided equally between the three brothers or their assigns. The auditor held that one-half of the res should be divided per stirpes and one-half per capita. He came to this conclusion by interpreting the first sentence of the will (by "will" meaning the last two-fifths of paragraph 18) as providing per stirpes distribution of *its* res, (that being one-half of "the other one-half of the

remainder of [testator's] estate"), and the second sentence as providing for a per capita distribution of *its* res (that being the other one-half of "the other one-half" of the "estate").

The court below held that *the entire distribution* provided for in the will, i. e., the last two-fifths of the 18th paragraph, should be per stirpes, and said: The testator "clearly shows that his intention to divide his estate into equal shares among his grand-nephews and nieces was that his basis of equality related to his four nephews and nieces and that their issue or children take through their parents and that as a consequence his scheme of distribution of this estate is a distribution *per stirpes. . . .* Had this testator contemplated a per capita distribution among the issue of his nephews and nieces at the time of distribution of this estate to them . . . the entire portion of his estate going to them would have been so distributed without reference to his nephews and nieces. . . . The will provides that all [nephews and nieces] must be dead before any distribution take place, his reference to them is descriptive and for the purpose of fixing the basis of distribution . . . and we are convinced that the last sentence in this paragraph . . . clearly was not intended to establish a basis or scheme of distribution distinct from the one already established." In other words the learned judge of the court below held that there was not for grand-nephews and grand-niece one res consisting of one-half of one-half of the remainder of the estate and another consisting of the second half of the same, but that *the res* for grand-nephews and grand-niece *was a unit* and that the last sentence of paragraph 18 provided that the one-fourth of the estate which would have gone to the issue of Josephine V. Remmel, had there been such issue, and the one-fourth that would have gone to the issue of William Conner, had there been such issue, remained as part of the res, whose per stirpes distribution was unequivocally directed in sentence No. 2 of paragraph 18, beginning, "And the other one-half I give," etc.

With the court's conclusion we agree. Appellant contends that the words "the same" in the paragraph's last sentence refer to "the other one-half" at the beginning of the preceding sentence, and that the testator intended a per capita distribution of this entire *"one-half"* (i. e., the res), upon the happening of the contingency which has happened, to wit, the death of one or more of his nephews and nieces without leaving issue. Our judgment is that these two words refer to the one-fourth share mentioned in the latter half of sentence No. 2 and we construe these two sentences together as meaning that one-fourth (which by the death of a nephew and a niece without leaving issue, became *two* "fourths") should be divided among the issue or children of his remaining nephews and nieces in accordance with the *per stirpes* scheme of distribution testator had already ordered. Webster's "New International Dictionary" (2d edition), defines the pronoun "same" as follows: "With the definite article . . . the one just referred to;—now chiefly archaic except in legal language." Accepting this definition of "the same" as "the one just referred to," we interpret the last sentence of paragraph 18 as though it read as follows: Should any of my said nephews or nieces die without leaving issue, then the one-fourth share of the one-half share (i. e., the res) that would have gone to the issue of said nephew or niece, shall be divided among the issue or children of my remaining nephews and nieces, leaving issue or children to survive them, and their heirs and assigns, according to the per stirpes formula of distribution commanded in the preceding sentence. Appellant's contention that the antecedent of "the same" is *not* the one-fourth share which is the last "res" the testator mentioned before he used the pronoun "same," but that its antecedent is another "res," to wit, "the other one-half," which is 62 words farther away than the last "res" testator was talking about, has no grammatical support and must be wholly rejected.

In this "will" testator used his four nephews and nieces merely as the main or controlling channels of distribution. In the sentence next to the last he clearly provides for a distribution *per stirpes* of *all* of this one-half of the remainder of his estate (i. e., the res). We can find in this last sentence of the paragraph no justification for holding that the testator intended that in the happening of a contingency which, because of the ages of his nephew and nieces, he knew would be likely to happen (and has happened), to wit, the death of one or more of them without leaving issue, the per stirpes distribution so carefully provided for in the second sentence of the paragraph should be utterly changed into a per capita distribution either of the "one-half of the remainder" of his estate or of any one or more "one-fourths" of that one-half. If he had contemplated any such radical change in distribution, he doubtless would have said so in a few words of unmistakable meaning. His specification in the preceding sentence of a "one-fourth share to the children" of each of his four nephews and nieces indicates that he knew the language appropriate to a *per* stirpes prescription.

The phrase in the last sentence, "leaving issue or children to survive them" is also significant. Testator does not merely say "children of my remaining nephews or nieces." The additional words "leaving issue or children to survive them" mean that these children take only via *their parents* and not merely qua grand-nephews or grand-nieces. If testator had intended a per capita distribution among the "third generation," he could have said simply: Then this other half of my estate shall be divided among my grand-nephews and grand-nieces, share and share alike. Having taken great pains to say in the first sentence that there should be a per stirpes distribution of the res, it is obvious that the testator in the next sentence directed that if *any one* of the four nephews or nieces should die without leaving issue then "the same," i. e., *the one-fourth share that would have gone to*

*that issue* (had there been such) should be divided among the issue or children of the surviving nephews and nieces according to the equation he had already definitely laid down.

That the only distribution testamentarily directed under any contingency is a stirpetal one is manifest to us from the testator's language, but if there is any cloud of ambiguity in his last sentence which is not dispelled by the light that so clearly shines from the sentence that precedes it, such ambiguity should be resolved in favor of the per stirpes distribution because such is the customary distribution provided for by testators who wish to take care of "the third generation" where their children, or nephews or nieces (as the case may be) are for any reason not to inherit. When the meaning of any part of a will is ambiguous it should be interpreted in harmony with those provisions of the intestate laws which would control if the ambiguity amounted to intestacy as to the res affected. "Where the meaning of a devise is uncertain, the law will adhere as closely as possible to the general rules of inheritance, and whosoever claims against the law of descent must show a satisfactory written title: Grim's App., 89 Pa. 333"; Abel v. Abel, 201 Pa. 543, 51 A. 333. Section 9 (d) of the Act of June 7, 1917, P. L. 429, 20 P. S. 65, provides that if an intestate shall die leaving neither brothers nor sisters, the nephews or nieces (that is, the second generation) shall take per capita, and that each child of a deceased nephew or niece shall receive an equal portion of the share which his or her parent would receive if living at the death of the intestate (that is, per stirpes). In other words, under the intestate law the second generation takes per capita and the third generation takes per stirpes. In the instant case we are dealing with the third generation. In Ortt's App., 35 Pa. 267, this court held that a direction to divide the residue among the testator's "next heirs," in equal shares, or their children, if their parents should not be living, vests the same in nephews and nieces per capita

(they being the nearest relatives), and in grand-nephews and grand-nieces per stirpes. Section 11 of the Intestate Act of 1917 (supra), provides: "The grandchildren of brothers and sisters, and the children of uncles and aunts shall be entitled to take, by representation, the shares of real and personal estate which their parents would have taken if living; but, except as hereinafter provided, there shall be no representation admitted among collaterals after the grandchildren of brothers and sisters and the children of uncles and aunts."

Appellant cites the following from Sheldrake's Est., 308 Pa. 542, 162 A. 823: ". . . Testator's intention must be gathered from the words he uses in the disposition clause. . . . While it is true that the entire instrument should be considered, it is on the other hand clear that this rule is only available when there may be doubt as to a particular disposition of a part of the estate. Where a testator uses language that is plain and certain, which does not conflict with any other part of the will, there is no necessity to consider the entire instrument, . . ." This principle we accept, of course, in its entirety but we do not accept appellant's application of it here. Appellant construes the phrase "the same" in the last sentence of the paragraph as *unquestionably* meaning "the other half of [testator's] estate" as used in the second sentence. In order to do this appellant has to set aside the rules of verbal engineering which require the consideration of the comparatively near-by phrase "one-fourth share" as being the antecedent of "the same." Since this phrase grammatically relates to "one-fourth share," it is obvious that both the second and third sentences of the 18th paragraph should be considered as an entirety and the distribution of the res controlled by the per stirpes formula so emphatically laid down. If it is not "plain and certain" as to just what "the same" refers to, then the following principle enunciated in Dean v. Winton, 150 Pa. 227, 232, 24 A. 664, controls: "The intent of a testator is to be gathered from his entire will

rather than from the terms of a particular devise, which regarded alone might be inconsistent with his testamentary scheme as a whole." For this testator to have with great care and precision prescribed in the second sentence of paragraph 18 a per stirpes distribution of "the other one-half of the remainder" of his estate (i. e., the "res" as herein used), and then to have ordered in immediately following *equivocal* language that in the event which he must have regarded as altogether likely, to wit, that one or more of his nephews and nieces would die without issue, a per capita distribution among all his grand-nephews and grand-nieces should be made, is to present such an anomaly in will-making as to require a testamentary expression of unchallenged clarity for it to command judicial support. "A scheme of distribution unusual in our law requires plain and unequivocal language to establish it: Whitaker's Est., 175 Pa. 139, 143, [34 A. 572]." See also Miles's Est., 272 Pa. 329, 116 A. 300.

The decree is affirmed at appellant's cost.