## Willis Estate

178

*Norman E. Donoghue, II*, of *Dechert, Price & Rhoads*, for accountant.

*C. Leo Sutton*, for *Stephen J. Harmelin*, guardian and trustee ad litem for minors and unborn and unascertained persons claiming through two grandchildren of testatrix.

*John F. Meigs*, pp., guardian and trustee ad litem for minors and unborn and unascertained persons claiming through remaining grandchild of testatrix.

KLEIN, *A. J.*, February 11, 1976—The reason for filing the present account is the death on October 30, 1973, of Valerie E. Adams, an income beneficiary.

The trust arises under Article Sixteenth of testatrix' will, as modified by Article Second of the codicil thereto, whereby testatrix gave one-third of her residuary estate in trust for the benefit of her grandchildren, Helen Gilberta Nice (nee Adams), Carmalt Willis Adams and Harry Lawson Adams, in equal shares for their lives. In case of the death of Carmalt Willis Adams leaving his wife, Louise O. Adams, to survive, she should receive the share of income formerly paid her husband for her life; and likewise in the case of death of Harry Lawson Adams leaving his wife, Marjorie D. Adams, to survive, she should receive his share of income for her life. It was provided that upon the death of each said grandchild (and the named wives of the grandsons if they survive their respective husbands), his or her share of the income should be paid, per stirpes, to his or her issue until the expiration of a 21-year period beginning at the death of the survivor of said three grandchildren when the principal shall vest and be distributed among such issue in the same proportions as they received the income. In the event that there were no issue of grandchildren surviving at any time within the 21-year period after the death of the last surviving grandchild or widow of a grandchild, the corpus was to be distributed in accordance with the provisions of the will as to the other two-thirds.

The first grandchild, Helen Gilberta Nice, is still living. The second grandchild, Carmalt Willis Adams, died February 22, 1936, survived by his wife, Louise O. Adams, who died November 6, 1970, survived by issue. The third grandchild, Harry Lawson Adams, died January 8, 1946, survived by his wife, Marjorie D. Adams, who died April 6, 1970, survived by issue. One of the issue of Marjorie D. Adams, Valerie E. Adams, died October

30, 1973, without issue. The trust has not terminated as to any part.

No Pennsylvania inheritance tax was paid during the period covered by this account and none was claimed by the Commonwealth at the audit.

All parties in interest are stated to have received notice of this audit.

At the audit there was presented for adjudication the question of how Valerie Adams' one-sixth income share is now to be distributed, since she died without leaving surviving issue. Prior to her death, Valerie Adams had been receiving one-half of the one-third income share of her father, Harry Lawson Adams, her mother, Marjorie D. Adams, having succeeded to that income interest until her death in 1970. Mrs. Daphne G. Davisson, Miss Adams' sister, was receiving the other one-half of that one-third. Helen Nice Adams, a named grandchild beneficiary of Article Sixteenth, was receiving one-third of the income and the last one-third was distributed to the issue of testatrix' grandson, Carmalt Willis Adams, one-third each to Carmalt Adams' two surviving sons and 1/12th each to the four children of Carmalt Adams' deceased son.

The distribution of the share of income formerly received by Valerie Adams is covered by the third paragraph of Article Sixteenth, as follows:

"Pending this Trust for payment of income, as aforesaid, should the income share of any income taker be released by death, *without surviving issue*, there shall be no lapse, but the share so released shall thereafter become a part of the total income and be *distributable among the survivors as above provided*." (Emphasis supplied.)

The question arises whether Valerie Adams'

one-sixth income share remains solely within the line of Harry Lawson Adams and is distributable to Valerie Adams' sister, Mrs. Davisson, or whether the one-sixth share is now distributable to the issue surviving in the lines of all three Adams grandchildren.

The accountant takes the position that the share of income formerly received by Valerie Adams remains within the line of her father, Harry Lawson Adams, and is distributable to her sister, Mrs. Davisson, who would then be entitled to receive one-third of the income of the trust under Article Sixteenth as the oldest living issue of Harry Lawson Adams.

Because of divergent interests among the descendants of testatrix, the auditing judge took the unusual step of appointing two guardian-trustees ad litem. By decree of this court dated October 10, 1975, Stephen J. Harmelin, Esq., was appointed guardian ad litem for minors and trustee ad litem for all unborn and unascertained persons who might claim an interest through Carmalt Willis Adams and Helen Nice Adams; and, by the same decree, John J. Meigs, Esq., was appointed guardian ad litem for minors and trustee ad litem for all unborn and unascertained persons who might claim an interest through Harry Lawson Adams.

Mr. Harmelin and Mr. Meigs have filed comprehensive written reports. Both recommend that the account be confirmed but they disagree as to the question presented for adjudication. Mr. Meigs joins the accountant in the view that the share of income of Valerie Adams remains within the line of her father, Harry Lawson Adams. Mr. Harmelin takes the opposite view, maintaining that this share of income is distributable to all of the surviv-

ing issue of the three Adams grandchildren, one-third of Valerie Adams' one-sixth share or 1/18th, going to each Adams grandchild's line.

We should note at this point that none of the interests represented by Mr. Harmelin and Mr. Meigs has an immediate right to share in the income from the trust, regardless of which legal position prevails. However, the income awards herein, and ultimately the distribution of principal, will be determined by how the question at issue is resolved. This is so because of the provision of Article Sixteenth of the will which reads:

". . . the principal of the said third shall then vest in such then surviving issue in the same proportions as they shall have been receiving the income therefrom immediately prior to such ending."

Mr. Harmelin argues, on behalf of the interests he represents, that the question is controlled by the third paragraph of Article Sixteenth, supra. His position is that the language is clear and unambiguous and requires that Valerie Adams' one-sixth share of income now be added back to the original shares and distributable among all three lines of testatrix' descendants. He cites Brown Estate, 349 Pa. 23, 26, 36 A. 2d 335 (1944), for the proposition that: " 'It is a rule of common sense as well as law not to attempt to construe that which needs no construction' "; and Wharton Appeal, 373 Pa. 360, 370, 96 A. 2d 104 (1953), for the rule that ". . . in construing a will, the question is not what testator may have meant but the meaning of the language used."

We do not agree that the language we are considering is clear and unambiguous. As Mr. Meigs points out at page 11 of his report, the words "total

income" are undefined and are subject to at least three interpretations. Furthermore, he notes, the words "as above provided" can be construed in more than one way.

Testatrix' use of the words "without surviving issue" is also confusing. She went to great lengths to create separate trusts for her three grandchildren and throughout the will she provided for stirpetal distributions which would maintain the integrity of each line. It would make sense to say that when she spoke of "surviving issue," she did not mean issue of a deceased income beneficiary but rather issue of the grandchild for whom the trust was established. In other words, so long as there was such issue living, the income distribution would remain within the blood line of the grandchild for whom the trust was created and only if that line terminated without issue would the other lines participate.

In short, the meaning of the language used by testatrix in the third paragraph of Article Sixteenth is far from clear. Rather than being unambiguous, we would characterize that language as being full of obscurities. Under these circumstances, we agree with Mr. Meigs' conclusion that "since testatrix disposition is otherwise overwhelmingly stirpetal, any such ambiguity should be resolved in favor of a stirpetal distribution." The Pennsylvania Supreme Court in Conner's Estate (No. 2), 318 Pa. 150, 158, 178 Atl. 15 (1935), gave as the main reason for such a resolution its finding as to the probable intent of testators, stating:

". . .[S]uch ambiguity should be resolved in favor of the per stirpes distribution because such is the customary distribution provided for by testators who wish to take care of 'the third generation'

where their children, or nephews or nieces (as the case may be) are for any reason not to inherit."

We, therefore, adopt Mr. Meigs' recommendation that the share of income formerly paid to Valerie E. Adams be added to the share presently received by Daphne A. Davisson and thus kept within the stirp of Harry Lawson Adams.

Mr. Harmelin and Mr. Meigs have each requested compensation for their services as guardian-trustees ad litem in the sum of $750. The auditing judge considers the fees requested as being reasonable under the circumstances in this case and they will be so allowed, to be charged against principal.

There was no objection to the account which shows a balance of principal of   $192,584.95 less compensation of $750 to each of Mr. Harmelin and Mr. Meigs for their services as guardian-trustees ad litem     1,500.00 leaving a balance of     $191,084.95 which is awarded to Provident National Bank, trustee, in trust for the continued uses and purposes declared in the will.

The account shows a balance of income before distributions of $19,041.42 which is awarded as follows: (1) one-third share of income to Helen Nice Adams; (2) one-third share of income formerly payable to Marjorie D. Adams: from death of Marjorie D. Adams (4/6/70) to death of Valerie E. Adams (10/30/73): one-half to Valerie E. Adams and one-half to Daphne Adams Davisson; from death of Valerie E. Adams (10/30/73) to Daphne Adams Davisson; and (3) one-third share of income formerly payable to Louise O. Adams from November 6, 1970: one-third to C. Willis Adams, Jr., one-third

to Louise A. Donner, one-twelfth to James C. Adams, Jr.; one-twelfth to Steven St. Lawrence Adams, one-twelfth to Kurt Jonathan Adams and one-twelfth to Charles M. Nice, Jr., Esq., guardian of the estate of Peter Adams Nice, 16 Montcrest Drive, Birmingham, Ala. 35213.

There is accrued income of $14.44 for the benefit of Valerie E. Adams as of the date of her death which has not been paid. The accountant has reported difficulty in locating Miss Adams' personal representative and requests this sum be awarded back to it pending location of the true owner. There being no objection, it is so ordered.

All awards are subject to such distributions as have heretofore been properly made.

Leave is granted to the accountant to make all transfers and assignments necessary to effect distribution in accordance with this adjudication.

And now, February 11, 1976, the account is confirmed nisi.