## Garrett Estate.

Argued November 17, 1952. Before STERN, C. J., JONES, BELL and MUSMANNO, JJ.

re-argument refused February 13, 1953.

*Harry R. Back,* with him *Back & Levy* and *H. Jerome Jaspan,* for Marsh claimants, appellants.

*J. Wray Connolly,* with him *Moorhead & Knox,* for Hoover, claimant, appellant.

*Stella J. Platte,* in propria persona, claimant, appellant.

*Caroline McDonald Wismiller,* in propria persona, claimant, appellant.

*William H. Schwartz,* in propria persona, claimant, appellant.

*Mrs. Adele Schwarz Arnold,* in propria persona, claimant, appellant.

*Henry Schwarz, Jr.,* in propria persona, claimant, appellant.

*Walter Henry Schatz Platte,* in propria persona, claimant, appellant.

*Maxine K. Platte Schuessler,* in propria persona, claimant, appellant.

*Ella Schwarz Bott,* in propria persona, claimant, appellant.

*Walter H. Schwarz,* in propria persona, claimant, appellant.

*Arthur R. Schor,* with him *Rowland F. Kirks, Gerald A. Gleeson, Thomas H. Creighton, Jr.,* and *Howard H. Yocum,* for Attorney General of the United States, etc., et al., appellees.

*Percival H. Granger,* Counsel, and *Harry F. Stambaugh,* Special Counsel, with them *Harry T. Devine* and *Joseph X. Yaffe,* Assistant Counsel and *Robert E. Woodside,* Attorney General, for claimant, appellee.

OPINION PER CURIAM, January 5, 1953:

Henrietta E. Garrett died a resident of Philadelphia County on November 16, 1930, intestate as to her residuary estate of over $17,000,000. Nearly 26,000 claims were filed in the Court below by persons claiming the estate as next of kin. The Orphans' Court appointed a Master and Examiners who held some 2,000 hearings and took the testimony of over 1,100 witnesses. The record composed mainly of testimony and exhibits, totals 390 volumes covering over 115,000 pages. After a painstaking examination of the thousands of claims which were presented, the Master submitted to the Orphans' Court on September 18, 1950, a 900 page report which included 2,077 findings of fact and 36 conclusions of law. The Master found that the decedent, Henrietta E. Garrett, nee Schaeffer, was survived by *three first cousins,* Herman Adolph Kretschmar, Howard Sigismund Kretschmar and Johann Peter

Christian Schaefer I, and that these relatives were entitled, as next of kin, to her estate under the Intestate Act of June 7, 1917, P.L. 429.

Judge KLEIN, who sat as Auditing Judge in the Orphans' Court, adopted all of the findings of fact and all of the conclusions of law found or made by the Master (except one which is immaterial in the determination of this appeal); his adjudication covering 369 pages was confirmed absolutely by the Orphans' Court on January 10, 1952; the schedule of distribution filed pursuant to the adjudication was approved on January 31, 1952.

On June 30, 1952, all the appeals to this Court as of the above term and numbers were consolidated for the purpose of argument and disposition. What is said hereinafter in this Opinion will apply in general to all the appeals, although each appeal will be very briefly discussed seriatim.

The Attorney General of the Commonwealth of Pennsylvania vigorously contended for 15 years that Henrietta E. Garrett died without leaving any next of kin to survive her and consequently her residuary estate escheated to the Commonwealth. Thereafter a compromise was executed which in effect recognized that the three above named persons were first cousins and next of kin of Henrietta E. Garrett. The compromise agreement was approved by the Attorney General of Pennsylvania, the Governor of Pennsylvania, the Auditor General and the Assistant Secretary of Revenue of Pennsylvania and the Attorney General of the United States.

The findings of the Master adopted by the Court satisfied everyone except 26,000 disappointed claimants. It is therefore not surprising to find, 22 years after the death of Henrietta E. Garrett, that some persons still sincerely believe that they are entitled to her estate as

next of kin and cannot understand how any Court can fail to recognize their close relationship to their dear and treasured Henrietta whom they never saw or knew but of whom they have recently become so fond.

In view of all the foregoing facts, the burden of proving any claim at this late date must in fairness and justice be a heavy one for, unlike Tennyson's brook, the Garrett estate cannot go on forever.

### THE MARSH CLAIMS

The Marsh claims are based upon their alleged relationship on decedent's maternal line. When their claim was listed for hearing before the Master on April 2, 1941, they requested a continuance which was refused, and their claim, like countless others under similar conditions, was marked "Passed". Claimants did nothing to prove their claim until after the Master notified them on November 15, 1949, and again on November 30, 1949, that if they wished to present a petition to reopen their claim they should do so within two weeks. This they failed to do. When their counsel wrote to the Master on November 21, 1950, requesting a hearing, the Master refused because counsel's "letter suggests no reason which would justify the granting of a rehearing of these claimants". Claimants ascribe their delay to the refusal of the Master to show them certain exhibits which they needed to complete their genealogical proofs. The Master at his first hearing on January 14, 1937, wisely issued the following notice: "Claimants must prove their claims at their own expense and in accordance with the law and practice of the Commonwealth of Pennsylvania, U.S.A. *We will not assist or advise claimants respecting proof or procedure.*"* The wisdom of and necessity for such ruling and procedure must be apparent to everyone. It is

---

* Italics, ours.

clear that if the Master or examiner had assisted claimants, or if the Master had allowed every claimant to examine the genealogical tree of Henrietta E. Garrett extending back several hundred years (assuming it was then known) it would (a) have opened wide the door to charges of favoritism and fraud, and (b) the number of claimants who would have traced their ancestry to the Henrietta E. Garrett family tree would probably have been nearer 26 million than 26 thousand.

Moreover, the Auditing Judge found as a fact that the claimant and his brothers and sisters are not related in any way to the decedent. Equally important, according to their own contention, the closest relationship of any member of the Marsh family to Henrietta E. Garrett was a second cousin. Each of these findings is sufficient to bar these claims. "The law is well settled in Pennsylvania that under the Intestate Act of June 7, 1917, P.L. 429, first cousins take the entire estate to the exclusion of first-cousins-once-removed, and of second cousins: Miles's Estate, 272 Pa. 329, 116 A. 300; Bell's Estate, 31 D. & C. 670; Hunter, Pennsylvania Orphans' Court Commonplace Book, Vol. I, page 674": *Garrett Estate,* 371 Pa. 284, 289, 89 A. 2d 531.

We find no merit in any of the Marsh contentions.

### THE PLATTE CLAIMS

The learned Auditing Judge after tracing the genealogy of the present appellant and of the Platte group quoted with approval from the report of the Master as follows: "The case represented by Mrs. Platte is a preposterous case, contending a woman born by the name of Louisa in Germany, stayed there until 1870, then came to this country, married Walter Garrett and died as Henrietta E. Garrett. The proof of such an allegation is absolutely lacking." We agree that there was no legally competent evidence to support the claim

of this appellant. Mrs. Platte in her brief of argument said that counsel for the successful next of kin and the Judges and the West Publishing Company knew that she and her family were the lawful heirs, but counsel for the Commonwealth and others kept this racket going because of their greed for money. This appellant seems to think that slander, libel and vituperation can take the place of proof. There was no evidence to substantiate these false and unjustifiable allegations; and no evidence legally sufficient to prove her claim.

### THE WISMILLER CLAIM

Caroline McDonald Wismiller claims she is a first cousin of a girl named Charlotte Mooney and that Charlotte Mooney was actually Henrietta E. Garrett. The Wismiller claim is thus summarized by the learned Auditing Judge: "According to her story, Henrietta E. Garrett, the decedent, was not really Henrietta E. Garrett, nee Schaefer, but Charlotte Mooney, daughter of the claimant's uncle, Peter Lawler Patrick Mooney. She stated that her uncle married very young in Ireland, that a daughter, Charlotte, was born of this marriage, that the real Henrietta E. Schaefer died when she was a child, and that the Schaefers took Charlotte into their home, and raised her as their own child. . . .

"The claimant was unable to substantiate any of her fantastic allegations with proof of any kind and relied entirely upon the photographs of Henrietta E. Garrett which appeared in the Saturday Evening Post and upon statements alleged by her to have been made by a family named Young, who were [neighbors but] completely unrelated by blood or marriage to the family of the real Henrietta E. Garrett." These statements alleged by her to have been made by a family who were not proved by other evidence to be related to the family of the real Henrietta E. Garrett are inadmissible; *Garrett Estate,* 371 Pa. 284, 288, 89 A. 2d 531; *Link's*

*Estate (No.1)*, 319 Pa. 513, 520, 180 A. 1; *Sitler v. Gehr*, 105 Pa. 577, 596. "Pedigree is an exception, arising ex necessitate, to the hearsay rule. . . . Declarations as to pedigree are admissible if (1) the declarant is dead; (2) the declarations were made before the controversy arose or as is frequently said, 'ante litem motam'; and (3) the declarant was related to the family of which he spoke, and this relationship is proved by evidence dehors the declaration."

There is no merit in this appeal.

## EVA V. HOOVER CLAIM

Mrs. Hoover's claim is based on the theory that her mother, Mrs. Mick, was not her mother at all, but that she is the daughter of a Mrs. Henrietta E. Garrett of Philadelphia. Mrs. Mick lived with her husband and several children in a small farming village in West Virginia which could be reached from the nearest railroad station by stagecoach in two days. According to Mrs. Hoover, a stranger who said her name was Henrietta E. Garrett of Philadelphia appeared at the Mick home in October 1873, accompanied by a man who was not her husband and a small baby, recently born in the hills of West Virginia. She begged Mrs. Mick to take her child who was born on September 1, 1873, and keep it in exchange for Mrs. Mick's baby who was also born on September 1, 1873 but died the night of the unexpected visit. Mrs. Mick took the baby, who is the present claimant, and raised her as her own child until she wrote her the following letter on March 1, 1912:

"March 1st, 1912

"Dear Eva

"i am getting worse every day i wrote you to come home but am afraid you wont get here untill too late and to ease my mind i must write and tell you of a secret i have kept for years it hurts to tell you for i hae always loved you as if you had been my own but you are

not my child it was the first week in October 1873 a man and a woman with a baby asked to stay all Night Mr was away from home and my baby was sick so i was glad to have them stay that night my baby died with membranous croupe who said her name was Henrietta E. Garrett of Philadelphia Pa. begged me to take her child a girl born on September the 1st same day my baby was born She said her husband didnt like children any was glad that the Dr told him they would never have any and she was scarred to tell him she was with child and while on a visit to friends the baby was born and on her way home she was going to put it in an orphanage she gave me one hundred dollar and took my baby with her said the man would bury it. three years later she wrote and wanted to adopt you guess her conscience hurt her i wrote her you had died

Good bye

(Signed) Jane L. Mick

Wit by—
Samuel B. Myers
S. J. Mick"

Mrs. Mick's signature was declared to be genuine by a handwriting expert produced by claimant.

The husband of Henrietta E. Garrett, Walter Garrett, never knew he had a child because he said in his will which was dated March 3, 1890, 17 years after the exchange of babies, that he and his wife had not been blessed with any children clearly indicating that he would have liked to have had children but never had had any. Birth records and other documents conflict with the claimant's story of her birth and with several of her other contentions. Two handwriting experts produced by the Government of the United States testified that the entire letter was a forgery. A son-in-law of Samuel B. Myers, an alleged witness to the letter,

testified that the signature of his father-in-law was a forgery. The Auditing Judge disbelieved the testimony of claimant and her witnesses and said her claim "still appears to be fantastic, preposterous and taxes credulity".

The aforesaid letter of March 1, 1912, and other testimony upon which Mrs. Hoover principally relied was hearsay and clearly inadmissible: See *Garrett Estate*, 371 Pa., supra; *Link's Estate (No. 1)*, 319 Pa., supra; and *Sitler v. Gehr*, 105 Pa., supra.

However, even if all her evidence were admissible, where testimony is improbable or conflicts with likely facts or circumstances or public records or where for any reason its credibility is doubtful, a jury or Judge is not compelled to accept it as true, even though it be uncontradicted. "There is nothing which compels the fact finding body, whether it be judge or jury, to accept as verity uncontradicted testimony. Credibility of witnesses is always for the finders of fact: Nanty-Glo Boro. v. Amer. Surety Co., 309 Pa. 236, 163 A. 523. The disbelief of witnesses by a chancellor or . . . auditing judge which is approved by the court en banc, is conclusive on the appellate courts in the absence of proof of bias, prejudice, prejudgment, or capricious disbelief: Roberts Estate, 350 Pa. 467, 39 A. 2d 592; Osterling's Estate, 323 Pa. 23, 185 A. 790; Pusey's Estate, 321 Pa. 248, 184 A. 844"; *Archer Estate*, 363 Pa. 534, 70 A. 2d 857.

If testimony of the kind and character on which Mrs. Hoover or the Platte group or Mrs. Wismiller rely were to prevail, there would be little, if any, reason to keep birth, baptismal, marriage, church and other genealogical records since a next of kin who based his pedigree upon genealogical records would have little chance of ever inheriting the estate of an ancestor or near relative who died intestate.

Eva V. Hoover, although she claims to be the daughter of Henrietta E. Garrett, admits (in her brief of argument in this Court) that she "does not know if Eva V. Hoover was entitled to share in the Garrett Estate". Nevertheless, Mrs. Hoover contends, although she has no authority to support her contentions, that she was deprived of due process and of the equal protection of the laws because her claim was not treated in the same manner as other claims in the Garrett Estate, viz., she was permitted only several days before the hearing of her claim to examine decedent's personal effects and the records of testimony before the Master, but was never permitted to examine the investigation reports obtained by the Master.

Mrs. Hoover did not notify anyone of her claim until February 1946, when she alleges that she learned for the first time that the Estate of Henrietta E. Garrett was being administered in Philadelphia. On February 12, 1946, Mrs. Hoover came from her home near Pittsburgh to Philadelphia and presented to the Master and examiners the aforesaid letter from Mrs. Mick dated March 1, 1912, and later testimony to establish her claim. She was given five weeks' notice of the hearing of her claim before the Auditing Judge on May 14-19, 1951.

"The fundamental requirements of due process in a proceeding affecting property interests are (1) a notice of proceedings appropriate to the nature of the case . . . and (2) an opportunity to be heard. Anderson National Bank v. Luckett, 321 U.S. 233; Dohany v. Rogers, 281 U.S. 362; Ballard v. Hunter, 204 U.S. 241; Union Trust Co. of Pittsburgh Case, 359 Pa. 363": *Com. ex rel Chidsey v. Keystone Mutual Casualty Co.*, 373 Pa. 105, 95 A. 2d 664. Due process does not require a Master or Court to investigate a claim or prepare evidence for the claimant. It is crystal clear that Mrs.

Hoover was not deprived of her constitutional right of due process.

The Master, with the approval of the Orphans' Court of Philadelphia County, notified all claimants as hereinabove set forth: "Claimants must prove their claims at their own expense and in accordance with the law and practice of the Commonwealth of Pennsylvania, U.S.A. We will not assist or advise claimants respecting proof or procedure.

The successful next of kin proved their individual claims by testimony covering approximately 50 volumes and without any assistance from the Master or examiners. Nevertheless, Mrs. Hoover states that the examiner had no right to refuse to permit her to examine certain investigation reports since he advised her "claimants were given access to data in the possession of the estate custodian only when they had satisfied the Examiner that there was some possibility of kinship with the decedent". Even if we were to interpret this statement of the examiner as sweepingly as appellant does, there was no obligation upon the Master or the Court below to assist any claimant to prove her claim and there was no abuse of discretion in refusing to show this appellant, whose story is so improbable, the investigation records which had been obtained by the Court. "The inequality . . . [prohibited by the Fourteenth Amendment to the Constitution] is only such as is actually and palpably unreasonable and arbitrary": *Frost v. Corporation Commission*, 278 U.S. 515.

Considering the fact that there were 26,000 claimants any other ruling by the Court would have opened the door wide to claims of favoritism and fraud and would have resulted in fishing expeditions which would likely have dragged out this extraordinary estate not for 22 years, but for a century. We find no error of law, no abuse of discretion, and no denial of due process or

equal protection of the laws in this claim by the Master or Examiners or the Court below.

The Master and Examiners also took the position that Mrs. Hoover's claim was barred by the Act of June 7, 1917, P.L. 429, Sec. 21, as amended by the Act of June 4, 1943, P.L. 872, 20 PS 134, which barred all claims of next of kin which are not presented within 7 years of the death of a decedent. It is unnecessary to discuss or decide the constitutionality of this amendment.

We have considered all of the other contentions of each appellant and find no merit in any of them.

The Decree of the Orphans' Court of Philadelphia County is affirmed in each case involved in these appeals; costs to be paid by each appellant respectively.

Justice STEARNE and Justice CHIDSEY did not participate in the consideration or decision of any of these appeals.