500

*E. Y. Calvin*, for plaintiffs.

*T. S. Tenor*, for defendant.

MCCREARY, P. J., September 15, 1955.—A complaint in equity was filed by the above named plaintiffs against the City of Beaver Falls, a city of the third class in the County of Beaver, praying that the court grant equitable relief to plaintiffs by entering a decree declaring: (a) That Ordinance No. 946 of defendant

be adjudged unconstitutional, illegal and void; (b) that an injunction issue enjoining and restraining defendant, its officers, employes and agents from enforcing or attempting to enforce any of the provisions of said ordinance against plaintiffs; and (c) such other other and further relief as the court may deem just and proper. Defendant filed an answer admitting all of the averments of fact well pleaded in the complaint, and asking the court to decree that plaintiffs are not entitled to any relief because the ordinance is valid.

Defendant then filed a præcipe setting the matter down on bill and answer, and filed a motion for judgment on the pleadings, and it is now before the court for disposition.

From the complaint, all of the averments of fact in which are to be taken as admitted, where well pleaded (Pribek et al. v. McGahan et ux., 314 Pa. 529; Siranovich et al. v. Butkovich et al., 366 Pa. 56) we make the following

### Findings of Fact

1. Plaintiffs are Newton M. Samuels and Wilson J. Samuels, citizens, residents and real property owners of the City of Beaver Falls, County of Beaver, and reside at 1009 Ninth Avenue in said city.

2. Defendant is the City of Beaver Falls, a municipal corporation, designated as a city of the third class, and located in the County of Beaver.

3. Plaintiffs are the owners of certain real property situate in the seventh ward of the City of Beaver Falls, described as follows: On the east side of Fourth Avenue between 36th Street and 37th Street; on the east side of Fourth Avenue between 33rd Street and 36th Street; and on the west side of Fourth Avenue north of 47th Street.

4. On the 4th day of October, 1948, the council of the said City of Beaver Falls enacted an Ordinance No. 946 of said city.

5. Ordinance No. 946, adopted as above noted, reads as follows:

"BE IT ORDAINED AND ENACTED BY THE COUNCIL OF THE CITY OF BEAVER FALLS AND IT IS HEREBY ENACTED RY THE AUTHORITY OF THE SAME AS FOLLOWS:

"Section 1. That from and after the passage of this ordinance it shall be unlawful for any person, firm or corporation owning, occupying or having a present interest in any real estate within the limits of the City of Beaver Falls, County of Beaver and Commonwealth of Pennsylvania, to permit weeds and similar vegetation not edible or planted for some useful or ornamental purpose, to grow or remain on the premises owned or occupied by them or along the streets, lanes, alleys and sidewalks abutting said premises so owned or occupied by them in said City, and all such weeds and vegetation are hereby declared to be a nuisance and detrimental to the health, safety and comfort of the inhabitants of said City.

"Section 2. All weeds or other vegetation hereinabove prohibited if permitted to grow or remain, contrary to the provisions of this ordinance, may at the option of the City Council be cut and removed by or under the direction of the head of the Department of Streets and Public Improvements of said City, or any other person designated by City Council to perform said work, and the cost of the cutting and removing thereof together with a penalty of ten percent (10%) above the cost thereof shall be collected by the filing of a lien or liens against said premises, or by action in assumpsit, or in any other manner as may be provided by law.

"Section 3. Any person, firm or corporation violating the provisions of this ordinance shall, upon conviction thereof, before the Mayor or any Alderman of this City, be sentenced to pay a fine of not more than Twenty-five Dollars ($25.00) and not less than Five Dollars ($5.00) for each offense, in addition to the costs of prosecution, and in default of payment thereof shall undergo imprisonment in the Beaver County Jail for a period of not more than ten (10) days.

"Section 4. It is hereby declared that each refusal or neglect by any person, firm or corporation to comply with the terms and provisions of this ordinance shall be considered a separate and distinct violation thereof and notice to the offender by the City shall not be necessary in order to constitute an offense."

6. Plaintiffs received written notice from the solicitor of said city that unless they started cutting weeds on their premises on or before October 1, 1954, in compliance with the provisions of said Ordinance No. 946, prosecution would be entered against them.

## Discussion

In their complaint plaintiffs set forth the legal conclusion that Ordinance No. 946 is wholly illegal, unconstitutional and void, and that its enforcement would cause irreparable loss to their property and that it would subject them to cumulative, exorbitant and oppressive penalties pending judicial determination of the validity of the legislation, in language as follows:

"A. Section 1 of said Ordinance makes it unlawful to permit any weeds or similar vegetation to grow on the premises of any property owner without any limitation or definition as to the height or extent of said growth, thereby making every property owner of the City who has any weeds on his property, even one-fourth inch in height, liable under its provisions and

is therefore unreasonable and void for failure to define and limit what shall constitute an offense and violation of said Ordinance.

"B. Section 1 of said Ordinance is unreasonable, unconstitutional and void for the further reason that it declares 'all such weeds and vegetation' to be a nuisance and detrimental to the health, safety and comfort of the inhabitants of said City without defining or limiting the height or extent of the growth of said weeds or other vegetation before they become such nuisance, or providing some mode or method for such determination by Council.

"C. Section 2 of said Ordinance is unconstitutional, unreasonable and void for the reason that it provides that, without any hearing or any notice to the property owner, said weeds or other vegetation may be cut and removed under the direction of the head of the Department of Streets and Public Improvements or other person designated by City Council and the cost thereof imposed on the property owner without any limitation as to height or extent of growth or the number of times per year said cutting shall be performed by the owner or City Council, thereby making it possible for a property owner to be subject to such costs fifty or more times per year.

"D. Sections 3 and 4 of said Ordinance are unconstitutional and void for the reason that they provide that mere neglect to comply with the provisions of the Ordinance, without any notice and without any mode or method by which the duty of a property owner may be determined, shall subject the offender, upon conviction thereof, to a fine and costs for each offense.

"E. The Ordinance as a whole is in direct violation of the provisions of Article I, Section 9, of the Constitution of Pennsylvania, and also in violation of Section 1 of the Fourteenth Amendment of the Constitution of the United States of America."

We were at first concerned with the fact that plaintiffs were in the wrong court (equity) and that the validity of the ordinance could be tested only by plaintiffs subjecting themselves to arrest and raising the question of the reasonableness and constitutionality of the ordinance on appeal to the court of quarter sessions or by certiorari. But when we read what Mr. Chief Justice Stern said on the subject in the case of Adams v. New Kensington, 357 Pa. 557, we think it is abundantly clear that under the facts in the case we are considering plaintiffs had a right to proceed in equity. The chief justice there said, pp. 560, 561:

"It is elementary that an injunction will not be granted to restrain criminal prosecutions on the mere ground that the statute or ordinance on which the prosecution is based is, for any reason, unenforceable, since the party has an adequate remedy at law; he may establish at trial, by way of defense, the invalidity of the legislative enactment. But equity does have jurisdiction to enjoin such a prosecution where it is alleged not only that the statute or ordinance is unconstitutional and void but that its enforcement would cause the plaintiff irreparable loss to his property, either by effecting, if not a total suppression of his business, at least a grave interference therewith, or by subjecting him to the imposition of cumulative, exorbitant and oppressive penalties pending judicial determination of the validity of the legislation. In such cases, the ground of equitable jurisdiction is the protection of property rights, and the fact that a criminal proceeding is involved is merely incidental."

The Third Class City Law of June 23, 1931, P. L. 932, sec. 2403, as last amended, 53 PS §12198-2403 (60) provides that:

"In addition to the powers and authority vested in each city by the provisions of this act (the council of each city shall have power) to make and adopt all

such ordinances, . . . not inconsistent with or restrained by the Constitution and laws of this Commonwealth, as may be expedient or necessary for the proper management, care and control of the city . . . and the maintenance of the peace, good government, safety and welfare of the city, . . . and also all such ordinances . . . as may be necessary in and to the exercise of the powers and authority of local self-government in all municipal affairs; . . . and to enforce all ordinances inflicting penalties upon inhabitants or other persons for violations thereof, not exceeding three hundred dollars for any one offense, recoverable with costs, together with judgment of imprisonment, not exceeding ninety days, if the amount of said judgment and costs shall not be paid: Provided, however, That no ordinance . . . shall be made or passed which contravenes or violates any of the provisions of the Constitution of the United States or of this Commonwealth, or of any act of Assembly heretofore or that may be hereafter passed and in force in said city."

In the case of Adams v. New Kensington, supra, the chief justice further said, pp. 563, 564:

" 'Specifically, under the general welfare clause, or by virtue of general grant of power . . . municipal corporations are authorized to enact appropriate and reasonable ordinances, . . . to abate nuisances and regulate various kinds of occupations that may become nuisances or detrimental to the public health; . . .': McQuillin, Municipal Corporations, 2nd ed., sec. 950 (895), pp. 116, 117. In *O'Maley v. Borough of Freeport*, 96 Pa. 24, 30, it was said of a somewhat similar grant of authority: 'That the power here conferred is sufficiently comprehensive to cover every regulation necessary for the government of the borough and protection of its citizens, cannot, we think, be doubted.

The only limitation of this power is, that it must be exercised in a reasonable, lawful and constitutional manner.' In *The Borough of Warren v. Geer*, 117 Pa. 207, 212, 11A, 415, 416, the grant of such powers to a borough was said to be 'very broad indeed and practically includes whatever conduces to the benefit and advantage of the borough, and would seem to restrict the limitations upon its exercise to those which require ordinances to be reasonable, and not in conflict with the state or federal constitutions.' In *Sayre Borough v. Phillips*, 148 Pa. 482, 488, 24A. 76, it was said: 'By the organization of a city or borough within its borders, the state imparts to its creature, the municipality, the powers necessary to the performance of its functions, and to the protection of its citizens in their persons and property. The police power is one of these. Ordinances of cities and boroughs, passed in the legitimate exercise of this power, are therefore valid'. . . . Of course, any restriction imposed by such an ordinance on the use of property must be reasonably conducive to the safety, health, morals or general welfare of the public, for the exercise of the police power is always subject to judicial review and a law based upon it must not be patently beyond the necessities of the case but must bear some rational relation to the end to be attained: *Bryan v. City of Chester*, 212 Pa. 259, 61A. 894; *Manorville Borough v. Flenner*, 286 Pa. 103, 133A. 30 (affirming 87 Pa. Superior Ct. 84); *White's Appeal*, 287 Pa. 259, 134A. 409; *Harris v. State Board of Optometrical Examiners*, 287 Pa. 531, 536, 135A. 237, 239; *Commonwealth v. Zasloff*, 338 Pa. 457, 460, 13A. 2d 67, 69." See also: Everett v. Harron, 380 Pa. 123; Duquesne Light Co. v. Upper St. Clair Township, 377 Pa. 323; Boggs v. Werner, 372 Pa. 312.

In addition to this general grant of power to cities of the third class, the legislature has made specific

provision for the abatement of nuisances in language as follows, 53 PS 12198-2403 (16) :

"To prohibit nuisances, including, but not limited to, accumulations of garbage and rubbish and the storage of abandoned or junked automobiles or other vehicles on private or public property, and the carrying on of any offensive manufacture or business, and to require the removal of any nuisance or dangerous structure from public or private places *upon notice to the owner*, and, upon his default, to cause such removal and collect the cost thereof, together with a penalty of ten per centum of such cost, from the owner, by an action in assumpsit. The cost of removal and the penalty may be entered as a lien against such property in accordance with existing provisions of law. In the exercise of the powers herein conferred, the city may institute proceedngs in courts of equity." (Italics supplied.)

It will be noted that the legislature authorizes abatement of nuisances only "upon notice to the owner". Ordinance No. 946 provides no such notice. In fact it specifically rules out notice as a prerequisite to enforcement by flatly stating, in section 4, that "notice to the offender by the City shall not be necessary in order to constitute an offense". Cases need not be cited to show that municipalites are not sovereign entities. They have no power or authority to do anything except as the legislature directs. If the legislature says that a city of the third class may, by ordinance, abate nuisances, after notice to the property owner, the city has no authority to pass an ordinance denying the right of notice to the property owner. As was said by Mr. Justice Bell in the case of Genkinger v. New Castle, 368 Pa. 547, p. 549:

"Municipalities are not sovereigns; they have no original or fundamental power of legislation; they

have the right and power to enact only those ordinances which are authorized by an act of the legislature: *Kline v. Harrisburg*, 362 Pa. 438, 68A. 2d 182; *Murray v. Phila.*, 364 Pa. 157, 71A. 2d 280.

"Moreover, an ordinance must be in conformity with the provisions of the enabling statutes; if it conflicts therewith it is void: *Bussone v. Blatchford*, 164 Pa. Superior Ct. 545, 67A. 2d 587; *Grisbord v. Phila.* 148 Pa. Superior Ct. 91, 24A. 2d 646; *Kline v. Harrisburg*, 362 Pa., supra; 1 Dillon on Municipal Corporations, 5th Ed., 449."

The City of Beaver Falls need not pass any ordinance at all to cure its weed evil. The legislature has made ample provisions for the elimination of such evil by conferring certain powers on the Board of Health. After providing that, 53 PS §12198-2301:

"Each city shall, by ordinance, create a board of health as herein provided, or, in lieu thereof, council shall be the board of health. The board of health shall have five members appointed by council, who shall serve without compensation. Except as otherwise herein provided, membership on the board of health shall be incompatible with every other city office", the legislature went on to draw a blueprint outlining in great detail the procedure to be followed by the board of health for abatement of public nuisances, 53 PS §12198-2321, 2322, 2323, 2324. It will be noted that the legislature persists in its mandate of notice to the property owner.

The ordinance we are considering is invalid, not only because it rules out "due process" by denying the property owner the right to notice before the city proceeds to abate a nuisance: Garrett's Estate, 372 Pa. 438; but it is so vague and uncertain as to be unenforceable. As was said in the case of Murray et ux. v. Philadelphia et al., 364 Pa. 157, p. 176:

" 'Where a statute is "so vague, indefinite and uncertain that the courts are unable to determine, with any reasonable degree of certainty, what the legislature intended, or is so incomplete or conflicting and inconsistent in its provisions that it cannot be executed, it will be declared inoperative".' "

The same is true of a city ordinance. An ordinance is a statute enacted by council. The language of the ordinance we are considering is so "vague, indefinite, uncertain and contradictory that it is impossible to determine what council really intended": Forst et ux. v. Heyman et al., 1 D. & C. 2d 319. Section 1 of the ordinance makes it "unlawful for any person, firm or corporation owning, occupying or having a present interest in any real estate, to permit weeds and similar vegetation not edible or planted for some useful or ornamental purpose to grow on the premises owned or occupied by them or along the streets, lanes, alleys and sidewalks abutting said premises."

A casual reading of this portion of section 1 convinces the court that it should be declared illegal and void for the reason that it fails to define and determine what shall be the height of the weeds or the extent of the growth to constitute an offense under the ordinance. As this ordinance now reads every property owner of the city who permits any weeds or similar vegetation to grow on his premises, regardless of height or extent, is liable for violation thereof. Any property owner with two dandelions in his yard or along the streets, lanes and alleys adjacent thereto is subject to a penalty for violation of its provisions. We have weeds in our lawn in the form of dandelions and planten leaves which we would be glad to eliminate by legislative fiat if it were possible, but none of us ought to be subjected to a penalty because we have not been successful in preventing their growth, as is required by Ordinance No. 946.

Section 1 further provides that "all such weeds or other vegetation are hereby declared to be a public nuisance and detrimental to the health, safety and comfort of the inhabitants of the City". This is beyond the power and authority of city council. There is no statutory authority to support this provision, nor is it a valid exercise of the police power of the city. Council cannot by ordinance declare anything to be a public nuisance per se, which is not a nuisance as a matter of fact. There must be some definite method of determining the height and extent of the growth of these weeds in order to make them constitute a nuisance, or some method of judicial determination either by city council or the board of health. A growth of weeds in one place might constitute a nuisance while the same growth in some other location might not be. What constitutes a nuisance is a question which must be governed by the facts in each individual case. We believe that city council exceeded its authority when it declared all weeds or similar vegetation to be a public nuisance per se. Weeds one inch in height in most cases would not be injurious to the health, safety and comfort of anyone, but weeds in excess of one foot in height and of extensive growth might be so determined. There must be some means, either in the ordinance itself, or by some authoritative body, of determining, after consideration of the facts in each particular case, when such weeds can be declared a public nuisance. As this ordinance now reads, at least 90 percent of the property owners of the city are subject to prosecution for violation of its provisions, although not more than two percent may have sufficient growth of weeds on their property to constitute an actual nuisance. The ordinance is a perfect example of the unreasonable abuse of the police power. It constitutes an arbitrary and unreasonable abuse of

the legislative powers of city council, and, therefore, must be declared invalid by the court.

We agree with plaintiffs' further contention that section 2 of said ordinance is unconstitutional, unreasonable and void, for the reason that it provides that, *without any hearing or any notice to the property owner*, said weeds or other vegetation may be cut and removed under the direction of the head of the Department of Streets and Public Improvements or other person designated by city council, and the cost thereof imposed on the property owner, without any limitation as to height or extent of growth or the number of times per year said cutting shall be performed by the owner or city council, thereby making it possible for a property owner to be subject to such costs many times per year.

Sections 3 and 4 of said ordinance are unconstitutional and void for the reason that they provide that mere neglect to comply with the provisions of the ordinance, *without any notice and without any mode or method by which the duty of a property owner may be determined*, shall subject the offender, upon conviction thereof, to a fine and costs for each offense.

The ordinance as a whole is in direct violation of the provisions of article I, sec. 9 of the Constitution of Pennsylvania, and also in violation of section 1 of the Fourteenth Amendment of the Constitution of the United States of America.

Sections 2, 3 and 4 of said ordinance plainly violate the provisions of article I, sec. 9 of the Constitution of Pennsylvania, which provides:

". . . nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land."

The "law of the land" implies notice, the right to appear and answer and a remedy. Any proceeding

whereby a man's property is swept away from him without a hearing, trial or judgment, or the opportunity to make known his rights, is not according to the law of the land. What this section means was very well defined in the old case of Brown et al. v. Hummel et al., 6 Pa. 86, as follows, p. 91:

"What, then, is the law of the land, as it relates to the protection of private rights? Does it mean bills of attainder in the shape of an act of Assembly, whereby a man's property is swept away from him without hearing trial, or judgment, or the opportunity of making known his rights or producing his evidence? It certainly does not. It was to guard against such things which had been common in the reign of the Stuarts and their predecessors, and with which our forefathers of the Anglo-Saxon race were familiar, that these irrevocable and unassailable provisions were introduced into the constitution. The law of the land does not mean acts of Assembly in regard to private rights, franchises, and interests, which are the subject of property and individual dominion. But it means what is clearly indicated by the other provisions of the bill of rights, to wit: the law of the individual case, as established in a fair and open trial, or an opportunity given for one in court, and by due course and process of law. '*I am a Roman citizen*', were once words of power, which brought the proudest proconsul to a pause, when he was about to commit oppression: and the talismanic words, *I am a citizen of Pennsylvania*, secures to the individual his private rights, unless they are taken from him by a trial, where he has an opportunity of being heard by himself, his counsel, and his testimony, *more majorum*, according to the laws and customs of our fathers, and the securities and safeguards of the constitution. Sir Edward Coke defines the meaning of the words, *by the*

*law of the land*—for they were used in *Magna Charta,* and have been sprinkled with the tears and blood of many patriots—to be a trial by due course and process of law. I do not, therefore, regard an act of Assembly, by which a citizen of Pennsylvania is deprived of his lawful right, as the law of the land. The first judgment on earth was upon summons and hearing. Where art thou, Adam? and Hast thou eaten, etc., preceded the ejectment of Adam and Eve from their beautiful inheritance, the garden of Eden. And the proudest legislator may learn wisdom from such an example. It is against the principles of liberty and common right to deprive a man of his property or franchise, while he is within the pale of the constitution, and with his hand on the altar, and give it to another, without hearing and trial by due course and process of law. I oppose against it the majestic authority of this great people, as reflected from the constitution of their own making and adoption. And here, in this court, the citizen can never claim protection from that august and high charter in vain, if its provisions cover and protect his cause."

Where an ordinance interferes with the use and control of property without rational relation to public safety, health, morals or general welfare, or is a palpable invasion of rights secured by the fundamental law, the enactment cannot be sustained. An ordinance which so provides, without any requirement for *notice to the property owner* or opportunity to be heard in his own behalf, is unquestionably invalid. It is in direct violation of the constitutional guarantees on the ownership of property. As was said in Garrett Estate, 372 Pa. 438, p. 448:

" 'The fundamental requirements of due process in a proceeding affecting property interests are (1) a notice of proceedings appropriate to the nature of the case . . . and (2) an opportunity to be heard'."

It would be difficult to find a more flagrant example of the violation of the constitutional requirement of due process than we find in section 4 of this ordinance, supra, p. 3, finding of fact no. 5. It clearly and boldly states that "notice to the offender by the City shall not be necessary in order to constitute an offense". Such a declaration is the "kiss of death" to the whole ordinance.

All municipal ordinances must be reasonable. When unreasonable, they are void: The City of Chester v. The Chester Traction Co., 4 Pa. Superior Ct. 575; Bryan v. City of Chester, 212 Pa. 259; Rolling Green Golf Club Case, 374 Pa. 450.

As noted above the legislature has granted specific authority for city council to pass an ordinance to prohibit nuisances, but only after "notice to the owner".

The Third Class City Code, 53 PS §12198-2403, subsec. 16, provides sufficient authority for the enactment of appropriate and reasonable ordinances for the abatement and removal of nuisances. Some of the things mentioned in this section, such as "accumulations of garbage and rubbish and the storage of abandoned or junked automobiles", might be nuisance per se, but the essential requirement as stated is "notice to owner".

Any ordinance under subsection 16 should provide the essential steps outlined by the legislature for the abatement of nuisances, as we have previously pointed out, with *notice to the owner;* an opportunity to be heard; the right or opportunity to appeal to the Court; and an opportunity to remove the nuisance at his own expense before any costs can be imposed upon him for failure to do so.

In Ordinance No. 946 city council has declared all weeds growing or remaining on the premises of any property owner nuisances per se. In doing so council

extended its statutory authority. Weeds grow indiscriminately and abundantly all over the outlying sections of the city on the uninhabited hillsides and valleys. Some of them may have reached the height and extent of growth to have become nuisances. Most of them have not. Each and every property owner should have the right to a hearing and some method of judicial determination as to whether the weeds on his property constitute a public nuisance. Any weed ordinance which deprives him of that right must be declared arbitrary and unreasonable by the court. Anything which is not a nuisance cannot be made one by legislative fiat and then prohibited. No one plants weeds. They are a natural growth and come like the wind and the rain. Whether they are injurious to health is still an open question. Each case must be decided on its own facts.

In 3 PS §§241, 242 and 243, we find that the Pennsylvania legislature passed an act providing for the destruction of Canada thistle, chicory and marihuana, as obnoxious weeds. The act makes it unlawful for any property owner to allow these weeds to grow to such an extent that they go to seed. There is no penalty for allowing them to grow, but they must be cut before the seed is ripened. The act further provides for *notice to the property owner* and penalty for failure to comply. Why the legislature picked these three weeds from a possible 600 varieties must have been to prevent the dissemination of these weeds from the ripened seed. They are all three quite universally known as undesirable and injurious to agricultural crops. The court takes note, however, that notice must be given to the owner to remove these weeds before the cost of removing them can be imposed upon the owner. (See Act of March 22, 1862, P. L. 164).

In his written brief of argument contending for the

validity of the ordinance in question, counsel for defendant cites the case of Bayside Land Company v. Dolley, 103 Cal. App. 253, 284 Pac. 479. In that case under the ordinance abatement had to be preceded by resolution declaring noxious and dangerous weeds to be a nuisance. In addition, the ordinance provided that the property owner must be given notice and opportunity to be heard before the municipality had any right to enter upon the lands of the property owner to cut the weeds, and thereafter assess the property owner for the cost thereof.

Another case cited by defendant is that of the City of St. Louis v. Galt, 179 Mo. 8, 77 S. W. 876. In that case the ordinance under which defendant was convicted made it a misdemeanor for a property owner to allow weeds to grow to a height in excess of one foot. No such provision is made in the Beaver Falls ordinance now under consideration, but the ordinance declares all weeds to be a public nuisance.

The last case cited by defendant's counsel in support of his proposition that the ordinance under consideration is valid, is that of Greenwood et al. v. City of Lincoln, 156 Neb. 142, 55 N. W. 2d 243. In that case the charter of the City of Lincoln, Nebraska, authorized the municipal officers to cut weeds and charge the cost thereof to the property owner after notice to the property owner that the city would cut the weeds and charge the cost of the same against his property if he failed to cut the same on or before five days from the date of notice. The ordinance we are considering provides that the city of Beaver Falls may do so without any notice to the property owner.

Ordinance No. 946, as drawn, is illegal and void because: (1) It is vague, indefinite and uncertain; (2) it goes beyond the powers conferred on city council to abate nuisances in that it makes no provision for

notice to the property owner and affords no opportunity to the property owner to be heard, and (3) it is unconstitutional in that it denies the essential elements of "due process", namely, (a) notice and (b) an opportunity to be heard.

### Conclusions of Law

1. Ordinance No. 946 is invalid and void.

2. Complainants' petition for injunctive relief must be granted.

Accordingly, we make the following

### Decree Nisi

Now, September 15, 1955, Ordinance No. 946 of the City of Beaver Falls is adjudged to be unconstitutional, illegal and void, and defendant, its officers, employes and agents are perpetually enjoned from enforcing or attempting to enforce any of the provisions of said ordinance against plaintiffs. Costs to be paid by the City of Beaver Falls. This decree to become final unless exceptions are taken within 20 days from the date hereof.