**Verrall Estate**

*John S. Bernheimer*, for accountants.

*Louis Marion*, for Commonwealth.

KLEIN, P. J., December 4, 1961.—Edythe H. Verrall died on July 17, 1960, intestate, unmarried and without issue, leaving to survive her, as her heirs-at-law and next of kin, according to the statement of proposed distribution, 14 first cousins, each entitled to one-sixteenth of her estate; two first cousins once removed, children of a deceased first cousin, each entitled to one-thirty-second of her estate; and six first cousins once removed, children of another deceased first cousin, each entitled to one-ninety-sixth of her estate. Letters of administration were granted on August 12, 1960, and proof of advertisement of notice thereof was produced to the auditing judge.

All of the said parties in interest are stated to be living and of age and to have received notice of this audited.

From the above recitation of decedent's next of kin, it will be observed that decedent's estate is distributable to first cousins and first cousins once removed, taking stirpitally in the place of deceased first cousins, under the Act of December 10, 1959, P. L. 1747, amending the Intestate Act of April 24, 1947, P. L. 80.

The manner in which title to a decedent's property is transferred, whether by will or intestacy, is entirely within the discretion of the legislature. It is only by the grace of the sovereign State, the Commonwealth of Pennsylvania, that heirs or legatees are permitted to receive any benefit from a decedent's toil and energy. See Link's Estate (No. 1), 319 Pa. 513, 516 (1925).

Our legislature has, from time to time, made basic changes in the manner in which an intestate's estate should be distributed, particularly in situations such as that which exists in the present case, in which de-

cedent's next of kin are stated to be first cousins and first cousins once removed (children of deceased first cousins).

From the earliest days, all relatives, regardless of how remote their relationship to the decedent, including, of course, cousins, were entitled to inherit, and the Commonwealth's right to take by escheat was only exercised in the absence of any next of kin. The Intestate Act of June 7, 1917, P. L. 429, after permitting inheritance by all relatives in all degrees of kinship, provided:

"Section 24. In default of all such known heirs or kindred or surviving spouse, competent to take as aforesaid, the real and personal estate of such intestate shall go to and be vested in the Commonwealth by escheat."

Note—This is section 12 of the Act of April 8, 1833, P. L. 315, with the addition of the words, "competent to take."

The section was introduced in the Act of April 8, 1833, for the purposes of completing the system, and was taken from the Act of September 29, 1787, 2 Sm. L. 425.

Under the Intestate Act of June 7, 1917, first cousins took to the exclusion of more remote cousins: Miles' Estate, 272 Pa. 329 (1922); Garrett Estate, 371 Pa. 284 (1952); Garrett Estate, 372 Pa. 438 (1953). See also other cases cited in 3 Hunter's Pennsylvania Orphans' Court Commonplace Book 345. Similarly, second cousins excluded more remote cousins: Jennings Estate, 20 D. & C. 506 (1934).

In 1930, Henrietta Garrett died in Philadelphia leaving a will in the form of a letter, disposing of but $60,000 of an estate of close to $20,000,000. More than 25,000 persons made claim to her estate as next of kin. After 20 years of bitter litigation and approximately

100,000 pages of testimony, it was determined that she was survived by three first cousins, to whom her estate was awarded, to the exclusion of first cousins once removed and more remote cousins. Partly as a result of the furor engendered by this case, the legislature, patterning section 3 of the Intestate Act of April 24, 1947, P. L. 80, after the English Administration of Estates Act of 1925, restricted the next of kin who could take to first cousins and made the Commonwealth of Pennsylvania, as the sovereign State, the heir if the surviving relatives were more remotely related.

The commission's comment with respect to this change is most illuminating:

"Comment—The rights of the Commonwealth as a participant in an intestate estate are accelerated at the expense of persons more remotely related than first cousins, but not prior to indefinite issue of deceased brothers and sisters. A decedent who does not provide by his will for relations more remote than first cousins cannot be supposed to have much concern for them, and it is desired to avoid tedious and expensive searches for distant relations not expressly favored by the testator."

This was a most sensible and needed improvement in the law, serving to frustrate the so-called "laughing heir" and, at the same time, speeding up the distribution of the estates of intestates by eliminating long and expensive searches for distant relatives.

However, this was all undone and the law was changed again by the Act of December 10, 1959, P. L. 1747. Under its provisions, the group to which an intestate's estate shall descend was extended to include children of first cousins, i.e., first cousins once removed. The subsection now reads:

"(5) Uncles, Aunts and Their Children and Grand-

children. If no grandparent survives the decedent, then to the uncles and aunts and the children and *grandchildren* of deceased uncles and aunts of the decedent." (Italics supplied.)

Section 4(1) of the act dealing with the rules of descent was amended at the same time to set aside the well-established principle of Miles' Estate, supra, that first cousins took to the exclusion of more remote cousins. As amended, this section provides:

"Section 4. Rules of Descent.—The provisions of this act shall be applied to both real and personal estate in accordance with the following rules:

"(1) Taking in Different Degrees. The shares descending under this act to the issue of the decedent, to the issue of his parents or grandparents or to his uncles or aunts or to their children and grandchildren, shall descend to them as follows: The part of the estate descending to any such persons shall be divided into as many equal shares as there shall be persons in the nearest degree of consanguinity to the decedent living and taking shares therein and persons in that degree who have died before the decedent and have left issue to survive him who take shares therein. One equal share shall descend to each such living person in the nearest degree and one equal share shall descend by representation to the issue of each such deceased person, except that no issue of a grandchild of an uncle or aunt of the decedent shall be entitled to any share of the estate."

These changes will, in our judgment, tend to make the administration of the estates of decedents increasingly difficult. Even under the 1947 Act, great difficulty was encountered in many cases. It was frequently established that first cousins existed on one side of the family, either paternal or maternal, and absolutely nothing was known about cousins, if any,

on the other side. In such cases, it was impossible to make prompt distribution as the identity of all persons entitled to take and the amount of their shares could not be readily ascertained.

This problem will be magnified under the new legislation. In this era of jet planes and increasing population shifts, it was difficult enough under the old law to locate all of the first cousins; it may prove impossible in many cases to locate *children* of first cousins, as required under the new act. It appears to us that the real beneficiaries of this legislation will, in many cases, be genealogists, engaged in the business of "heirsearching." For examples of the nature of the activities of these gentlemen, see McIlwain's Estate, 27 D. & C. 619 (1936); Frazier Estate, 75 D. & C. 577, 592 (1951).

Every effort should be made to persuade the members of our legislature to repeal the amendments of 1959 and return to the provisions of the Intestate Act of 1947, restricting the next of kin who can participate in the distribution of an intestate's estate to first cousins or, failing this, at least, to restore the rule of Miles' Estate, supra, that first cousins take to the exclusion of first cousins once removed.

Fortunately, the present case appears to be an exception to the general run of cases involving cousins. Decedent's family was small and rather closely knit so that Mr. Bernheimer was able to prepare a complete family tree, fully authenticated by members of the family and supported by adequate documentary evidence.

Elizabeth M. Bayliss, one of the administratrices, whose father, Albert Bayliss, was a brother of Emily Bayliss Verrall, decedent's mother, testified with respect to the maternal side of the family, and Helen D. Sullivan, a daughter of Helen Verrall Davenport,

who was a sister of decedent's father, Frederick Verrall, verified the paternal side.

From the testimony of these two witnesses and the documentary evidence adduced in their behalf, the auditing judge is satisfied that the family tree submitted by counsel is correct and finds as a fact that Edythe H. Verrall was survived by the following: Ten maternal first cousins, Jennie T. Bayliss, Elena V. Roat, David E. Bayliss, Sr., George H. Bayliss, John F. Bayliss, Agnes B. Huffman, Alice B. Simmons, Mary Agnes Bayliss Furtner, Elizabeth M. Bayliss, and James Bayliss; four paternal first cousins, Mildred D. MacCausland, Helen D. Sullivan, George Verrall, and Florence Verrall Smith, or a total of 14 living first cousins; and by the following children of two paternal first cousins who predeceased the decedent: Wesley Davenport and Thomas A. Davenport, children of decedent's first cousin, Arthur Verrall Davenport, who predeceased decedent; and E. Wallace Verrall, Jr., Robert J. Verrall, William J. Verrall, Mildred V. Donohue, Noette V. Flynn, and Florence V. Hart, children of decedent's first cousin, Edward W. Verrall, who predeceased decedent.

Under the rules of descent set forth in section 4.1 of the Intestate Act of 1947, as amended, the 14 living first cousins are, therefore, each entitled to a one-sixteenth share of decedent's estate, and the other two one-sixteenth shares are distributable by representation to the children of the two deceased first cousins, viz., one-sixteenth in equal shares to Wesley Davenport and Thomas A. Davenport, or one thirty-second to each; and one-sixteenth in equal shares to each of E. Wallace Verrall, Jr., Robert J. Verrall, William J. Verrall, Mildred V. Donohue, Noette V. Flynn, and Florence V. Hart, or one ninety-sixth to each, and it will be awarded. . . .

And now, December 4, 1961, the account is confirmed nisi.